George SQUILLACOTE, et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 83–1882.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1984.

Decided July 13, 1984.

Kevin M. Forde, Richard J. Prendergast, Katrina Veerhusen, Chicago, Ill., for plaintiffs-appellants.

Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, and PELL and CUDAHY, Circuit Judges.

CUMMINGS, Chief Judge.

This class action lawsuit is another in the series of cases challenging Congressional efforts in the late 1970's and early 1980's to brake the inflationary economy by means of limitations on salary increases authorized for federal employees. See, *e.g.*, *United States v. Will*, 449 U.S. 200, 222, 101 S.Ct. 471, 484, 66 L.Ed.2d 392; *Foley v. Carter*, 526 F.Supp. 977, 980 (D.D.C.1981). The plaintiff class is composed of 5,000–6,000 executive level federal employees who are members of the Senior Executive Service (SES) established in 5 U.S.C. §§ 3131–3136 (1982).[1] The named plaintiffs are 21 Regional Directors of the National Labor Relations Board. They complain that salary limitations enacted by Congress in Fiscal Years (FY) 1979, 1980, and 1981 should not have been applied to limit their salaries, because the SES pay system, established in 5 U.S.C. § 5382 (1982),[2] superseded the limitations, and the

---

1. Membership in the SES was drawn from the upper levels of the General Schedule pay system (GS 16–18) as well as from the lower levels of the Executive Service (Levels V and IV). 5 U.S.C. § 3132(a)(2).

2. Section 5382 provides as follows:

limitations by their own terms did not apply to SES members.

The complaint was filed in the United States District Court for the Eastern District of Wisconsin and jurisdiction was invoked pursuant to 28 U.S.C. § 1346(a)(2) (the Tucker Act). The parties filed cross-motions for summary judgment and agreed that the issue is solely one of law. In a careful opinion, Chief Judge Reynolds granted the government's summary judgment motion and denied that of the plaintiffs, holding that the case presented no genuine issue of material fact and the defendant was entitled to judgment as a matter of law. *Squillacote v. United States*, 562 F.Supp. 338 (E.D.Wis.1983). Plaintiffs appeal from that decision. We affirm the district court's decision with regard to FY 1979 but reverse with regard to FY 1980 and 1981.

The Senior Executive Service (SES) was created as part of the Civil Service Reform Act of 1978 (CSRA) "to ensure that the executive management of the Government of the United States is responsive to the needs, policies, and goals of the Nation, and otherwise is of the highest quality." 5

U.S.C. § 3131. To establish the SES, positions were to be converted from GS–16, 17, and 18 levels and Executive Schedule levels IV and V.[3] See 5 U.S.C. § 3132(a)(2). The President was authorized to establish at least five SES pay levels as well as to set pay rates for the SES. 5 U.S.C. § 5382(a). Agencies were directed to designate positions deemed appropriate for conversion from the Executive or General Schedule to SES (P.L. 95–454, § 413(b)(1), 92 Stat. 1111, 1175), and employees serving in those positions at the time of the designation were entitled to elect to accept or decline conversion (*Id.*, Section 413(c)(1)). The actual conversion of positions to SES from the Executive and General Schedules took place on July 13, 1979, nine months after passage of the CSRA. See *id.*, Section 415(a)(1).

Like other federal pay systems, the SES does not exist in a vacuum but rather is part of an intricate web of legislation regulating both scheduled and payable rates of pay for federal employees. In addition to the statutes which establish the three pay systems already discussed and generally govern the overlapping of pay rates among the systems,[4] salary limitation provisions

---

(a) There shall be 5 or more rates of basic pay for the Senior Executive Service, and each senior executive shall be paid at one of the rates. The rates of basic pay shall be initially established and thereafter adjusted by the President subject to subsection (b) of this section.

(b) In setting rates of basic pay, the lowest rate for the Senior Executive Service shall not be less than the minimum rate of basic pay payable for GS–16 of the General Schedule and the highest rate shall not exceed the rate for level IV of the Executive Schedule. The payment of the rates shall not be subject to the pay limitation of section 5308 or 5373 of this title.

(c) Subject to subsection (b) of this section, effective at the beginning of the first applicable pay period commencing on or after the first day of the month in which an adjustment takes effect under section 5305 of this title in the rates of pay under the General Schedule, each rate of basic pay for the Senior Executive Service shall be adjusted by an amount determined by the President to be appropriate. The adjusted rates of basic pay for the Senior Executive Service shall be included in the report transmitted to the Congress by the

President under section 5305(a)(3) or (c)(1) of this title.

(d) The rates of basic pay that are established and adjusted under this section shall be printed in the Federal Register and shall supersede any prior rates of basic pay for the Senior Executive Service.

3. Before the SES pay system was enacted on October 13, 1978, the Executive and General Schedule pay systems were the two major pay and classification systems for federal executives. The General Schedule (GS) included 18 pay levels (GS–18 being the highest-paid level) and was the more comprehensive system. It covered civilian federal employees in a wide variety of positions, including but not limited to executive level employees. The Executive Schedule (ES) covered only executive rank employees. This schedule included five pay levels, with level I being the highest and level V the lowest-paid level. For more detailed explanation of the three federal pay systems (ES, GS, and SES), see 562 F.Supp. at 339–340.

4. *E.g.,* General Schedule employees may not be paid more than employees at Executive Schedule level V (5 U.S.C. § 5308) and SES employees may not be paid less than the GS–16 rate or

have been enacted periodically to cap for a prescribed period salaries of specified federal employees. These limitations often have been enacted as part of the appropriations process, especially during times of national economic difficulties, and often are challenged by those whose compensation is thereby limited. See, *e.g., U.S. v. Will,* 449 U.S. 200, 222, 101 S.Ct. 471, 484, 66 L.Ed.2d 392 (judicial salaries); *United States v. Dickerson,* 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (reenlistment bonuses); *Foley v. Carter,* 526 F.Supp. 980 (D.D.C.1981) (non-Article III Judicial Branch salaries).

The case before us arises in a similar context. The plaintiff class (plaintiffs) argues that salary limitations enacted for each of the first three fiscal years SES was in existence (FY 1979, 1980, and 1981) did not apply to SES. Because the Office of Personnel Management (OPM) applied those limitations to SES, so that plaintiff SES members did not receive the total salary increases they would have otherwise received, plaintiffs sued for damages amounting to the difference between the salaries they received due to enforcement of the limitation and the salaries they would have received if the limitation had not been enforced. Because plaintiffs separately challenged each year's limitation in a separate count and because the relevant legal issues are different for each count, each count will be considered separately.

A. Count 1: FY 1979 (October 1, 1978 through September 30, 1979).

■ On September 30, 1978, a general limitation on FY 1979 salary increases was enacted. This limitation, Pub.L. 95–391,

§ 304(a), 92 Stat. 788–89 (hereinafter Section 304(a)),[5] froze salaries for FY 1979 at the rates that were payable on September 30, 1978. This limitation affected the salaries of federal employees if the rates for their positions were fixed at or limited to rates equal to or greater than rates payable for level V of the Executive Schedule pay system. *Id.*

Section 304(a) was enacted prior to the passage, as part of the Civil Service Reform Act, of 5 U.S.C. § 5382, which established the system for setting SES pay rates. Plaintiffs rely heavily on the fact of Section 304(a)'s earlier enactment in challenging the application of the Section 304(a) limitation to SES. First they argue that certain descriptive referents in Section 304(a), ostensibly broad enough to encompass Section 5382 and the SES, do not in fact so apply because Section 5382 and the SES were not yet in existence at the time of Section 304(a)'s passage. Second, they contend that even if Section 304(a) initially applied to SES, Section 5382 subsequently repealed the limitation's application to SES. Because we conclude both that Section 304(a) applied to limit FY 1979 salaries of even SES members and that Section 5382 did not repeal the Section 304(a) salary limitation as applied to SES, we affirm the ruling of the district court that SES members were subject to the Section 304(a) salary limitation for FY 1979. Unlike the district court, however, we reach this conclusion without relying on legislative history for Section 304 or Section 5382. Because the language of both statutes is unambiguous on its face, such a review is unneces-

more than the Executive Schedule level IV rate (5 U.S.C. § 5382(b)).

5. Pub.L. 95–391, § 304(a) (September 30, 1978) provided:

No part of the funds appropriated for the fiscal year ending September 30, 1979, by this Act or any other Act may be used to pay the salary or pay of any individual in any office or position in the legislative, executive, or judicial branch, or in the government of the District of Columbia, at a rate which exceeds the rate (or maximum rate, if higher) of salary or basic pay payable for such office or

position for September 30, 1978, if the rate of salary or basic pay for such office or position is—

(1) fixed at a rate which is equal to or greater than the rate of basic pay for level V of the Executive Schedule under section 5316 of title 5, United States Code, or

(2) limited to a maximum rate which is equal to or greater than the rate of basic pay for such level V (or to a percentage of such a maximum rate) by reason of section 5308 of title 5, United States Code, or any other provision of law or congressional resolution.

sary. See, *e.g., Aloha Airlines Inc. v. Director of Taxation,* —— U.S. ——, 104 S.Ct. 291, 78 L.Ed.2d 10.[6]

### 1. *Section 304(a) applied to SES*

Section 304(a) describes the extent of its salary limitation by reference to the September 30, 1978 payable rate for positions; no salary could be paid "at a rate which exceeds the rate * * * of salary * * * payable for such office or position for September 30, 1978, * * *."[7] Plaintiffs suggest that because the SES was not yet established on September 30, 1978, their positions were not yet established either, so that Section 304(a) could not apply to them.

To decide for plaintiff on the basis of this argument, it would be necessary to conclude that the conversion of plaintiffs' positions from the Executive and General Schedules to the SES transformed these positions into new positions. But there is no basis for drawing such a conclusion. It is undisputed that plaintiffs did not receive new titles or take on new responsibilities when their positions were converted to SES on July 13, 1979. The Civil Service Reform Act created only a new pay system, not new positions with new responsibilities. The use of the word "conversion" in Section 413 of the Civil Service Reform Act (Pub.L. 95–454, § 413) to describe the ad-

ministrative process by which positions were to be placed in SES makes clear that at least initially SES would be composed of already-existing positions.

Plaintiffs point out that Section 413(c)(1)(B) refers to an employee's right to elect to "accept conversion and be appointed to a[n SES] position." But this statement does not establish that the positions, once converted, are new, especially in light of the directive in Section 413(c)(1), apparently overlooked by plaintiffs, that "each employee serving in a position at the time it is designated as an [SES] position" has the right to accept or decline conversion. In sum, the conversion was a transfer of positions to the new SES pay system rather than a creation of new positions.

This Court adopts the holding of the district court that the Civil Service Reform Act "did not create new positions which would enable plaintiffs, by converting to those positions, to move out from under the fiscal 1979 pay cap. For the purposes of Pub.L. 95–391 [Section 304(a)], the plaintiffs, after conversion to SES status, were regarded as continuing to hold 'office[s] or position[s]' existing on September 30, 1978." 562 F.Supp. at 343. Plaintiffs' positions, even after conversion to SES, continued to be subject to the Section 304(a) pay limitations.[8]

---

**6.** *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* —— U.S. ——, 104 S.Ct. 439, 78 L.Ed.2d 195, cited by plaintiffs as additional authority pursuant to Circuit Rule 11, is inapposite here. In that case, the Supreme Court relied on H.R. No. 95–1403, issued in conjunction with the House version of the Civil Service Reform Act, to clarify an ambiguous term of Section 7131 of that act.

**7.** Section 304(b) provides a mechanism for determining the September 30, 1978 rate for a position not yet in existence at that date. Under this mechanism, the rate for such a position is deemed to be the rate for a comparable position in existence on September 30, 1978. Comparability is determined for executive branch positions under regulations established by the President. Because there has been no showing that positions transferred to SES were treated under Section 304(b), this Court will not speculate about Section 304(b)'s applicability to the SES positions.

**8.** Plaintiffs point out that bankruptcy judges, whose positions were created in the Bankruptcy Reform Act of 1978, Pub.L. 95–598, enacted November 6, 1978, received 1979 salary increases authorized in Section 411 of that Act (11 U.S.C. § 411) despite Section 304(a)'s salary limitation. However, this does not provide support for plaintiffs' argument. The decision to pay the raises was made by the Administrative Office of the United States Courts (Pl.App. 37). So far as this Court has been able to determine, the validity of this administrative decision has never been judicially determined. *Foley v. Carter,* 526 F.Supp. 977 (D.D.C.1981), on which plaintiffs rely heavily, does not decide that Section 411 superseded the Section 304(a) pay limitation. That court's reference to Section 411 merely paraphrases the language of Section 411, without even considering the possible impact of Section 304(a). *Id.* at 980 n. 4. For this reason, we also find unpersuasive plaintiffs' suggestion that Section 411 of the Bankruptcy Reform Act supports, by analogy, a determination that Section 5382 repeals or supersedes Section 304(a).

Again relying on Section 5382's enactment subsequent to the passage of Section 304(a), plaintiffs argue alternatively that Section 304(a) does not describe their SES salary rates and therefore does not apply to them. By its terms (see *supra*, note 5) Section 304(a) applies to federal employees whose salary rates are (1) fixed at a rate at least equal to that for level V of the Executive Schedule (Section 304(a)(1)); (2) limited pursuant to Section 5308 (Section 304(a)(2)); or (3) limited to a maximum rate at least equal to the basic pay rate for level V "[b]y reason of * * * any other provision of law or congressional resolution" (Section 304(a)(2)). The SES at least apparently comes within this description, since Section 5382(b) (*supra*, note 2) caps salaries of SES employees at the rate payable for level IV of the Executive Schedule, a rate greater than the rate for level V. However, without citing authority, plaintiffs claim that Section 304(a) cannot validly apply to SES because Section 5382(b), setting SES rates, had not yet been enacted when Section 304(a) was passed.

This view is erroneous. There is no constitutional or logical basis for deciding that a statute may never apply to one enacted subsequently. *Ely v. Velde*, 451 F.2d 1130, 1137 (4th Cir.1971). Of course, the legislature enacting the second statute has the unfettered right to repeal expressly or impliedly the first statute (*id.*), but that is not the issue here. The issue here is whether Section 304(a), by its own terms, was intended to apply to SES salaries limited pursuant to the subsequently-enacted Section 5382(b) cap. Only if Section 304(a) is broad enough to apply to SES salaries under these circumstances, is it appropriate to consider whether Section 5382 repealed

Section 304(a) as to SES. We conclude that Section 304(a) is broad enough to, and in fact does, apply to SES and therefore shall consider the repeal issue, *infra*, Part A2.

Certainly Congress in Section 304(a) was establishing a far-reaching mechanism for limiting federal salaries during FY 1979. Section 304(a)(2)'s reference to "other provisions of law" expands the reach of the limitation to its fullest and brings under Section 304(a) exactly the kind of employees SES members are: those whose salaries were limited in FY 1979 to level V or above by any statutory provision, whether enacted before or during FY 1979.

Furthermore, plaintiffs' contention that Section 304(a) could not apply to the later-enacted Section 5382(b) leads to an absurd result. Given plaintiffs' interpretation, statutes could never apply to circumstances not in existence at the time of enactment of the original statute, so that, *e.g.*, "a 1925 statute dealing with 'news media' could not apply to television, and a 1930 statute dealing with 'motor cars' could not apply to Volkswagons." R. Dickerson, The Interpretation and Application of Statutes 129 (1975).

In sum, Section 304(a) applied to SES salaries because those salaries were limited to a rate "equal to or greater than the rate of basic pay for * * * level V [of the Executive Schedule] by reason of [Section 5382(b)] [an]other provision of law." Section 304(a).

2. *Section 5382 did not repeal Section 304(a) as to SES.*

Because this Court concludes that Section 304(a) applied to limit the salaries of

---

It may be, as the district court below suggests, that the Administrative Office of the United States Courts correctly paid in FY 1979 the salary stated in Section 411 because the bankruptcy judges, unlike SES members, in fact assumed new positions with new responsibilities and so were not subject to Section 304(a). 562 F.Supp. at 347. However, that case is not before this Court and we express no opinion on the propriety of the action of the Administrative Office. Similarly, it is clear that the administrative action has no binding effect on this Court's

decision in this case. In fact, that action is not even entitled to much deference since it at best indicates different views were held by different administrative offices about the applicability of Section 304(a) to different pay authorization statutes. Cf. *Ely v. Velde*, 451 F.2d 1130, 1135 n. 14 (4th Cir.1971). The Office of Personnel Management of the Executive Branch determined that Section 304(a) was applicable to limit Section 5382 salary rates while the Administrative Office of the Courts decided Section 304(a) did not apply to bar Section 411 salary rates.

SES members, it is necessary next to determine whether that application was cut off, or repealed, by the later-enacted 5 U.S.C. § 5382, which established the mechanism for setting SES pay rates. Section 5382 could repeal Section 304(a)'s salary limitation as to SES members if it contained express language of repeal, or if, absent express repeal language, it was in such irreconcilable conflict with the Section 304(a) salary limitation as to constitute an implied repeal. The district court concluded that Section 5382 neither expressly nor impliedly repealed the Section 304(a) salary limitation as to SES members. We agree.

Section 5382 mandates the initial establishment and periodic adjustment of at least 5 SES "rates of basic pay" which "supersede any prior rates of basic pay for the [SES]" (Section 5382(d)). The statute also directs that each SES member "shall be paid at one of the rates" (Section 5382(a)) and specifies that this payment "shall not be subject to the pay limitation of section 5308 or 5373 of this title [5]." (Section 5382(b)).

Plaintiffs assert that these provisions repealed the Section 304(a) pay limitation as applied to SES. First, they contend that Section 5382(d)'s direction that the rates set pursuant to Section 5382(a) supersede prior rates was an express repeal of the Section 304(a) pay limitation. But, as the district court aptly noted in rejecting this express repeal claim, "Sec. 5382(d) * * * cannot be interpreted to apply to Section 304(a) at all. As a salary limitation, Sec. 304(a) set *payable* rates for certain high-level federal employees. Sec. 5382(d), however, must be read to refer to *scheduled* rates." 562 F.Supp. at 344.

Plaintiffs argue that this reading tortures Section 5382 by assigning different meanings to the phrase "rates of basic pay" when used in different subsections of Section 5382. The premise underlying plaintiffs' argument is that this phrase, when used in subsection (a), means "payable" rates because that subsection directs that "each senior executive must be paid at one of the rates." Plaintiffs claim that

"[a] rate of basic pay that *shall* be paid is a 'payable rate' by any definition" (Br. 31).

Plaintiffs' premise is erroneous. Section 5382 refers to both payable and scheduled rates, sometimes in the same subsection but never in the same phrase. The statute distinguishes carefully, if subtly, between the two concepts. Judge Reynolds was correct in concluding that "rates of basic pay," used in subsection (d), referred to scheduled rates. The phrase "rates of basic pay" is used throughout Section 5382 only as a term of art to describe the rates established or adjusted by the President and subsequently published in the Federal Register, *i.e.*, the scheduled rates.

Section 5382(a) states that "[t]he rates of basic pay shall be initially established * *." Section 5382(b) provides for "setting rates of basic pay." Section 5382(c) directs that "each rate of basic pay for the [SES] shall be adjusted" and "[t]he adjusted rates of basic pay * * *" shall be reported to Congress. Finally, Section 5382(d) provides for printing in the Federal Register the established and adjusted "rates of basic pay" and directs that these printed rates "shall supersede any prior rates of basic pay."

On the other hand, the term "basic rate of pay" is never used when the statute refers to actual payment of salaries to SES members. Subsection (a) states that "each senior executive shall be paid at one of the rates" rather than "one of the rates of basic pay." Similarly, subsection (b) provides that "[t]he payment of the *rates* shall not be subject * * *."

The careful usage of "rates of basic pay" cannot be dismissed merely as an attempt to avoid unnecessary verbiage by using "rates" synonomously for "rates of basic pay." If that were the statute's intent, the entire phrase "rates of basic pay" need only have appeared once in subsection (d), rather than the two times it in fact appears. Its repetition confirms that the phrase was intended to refer only to scheduled and not to payable rates. Subsection (d), which states that rates of basic pay printed in the Federal Register supersede prior rates of basic pay for SES, does not

repeal the Section 304(a) limitation on rates payable to SES members.

It is arguable, however, that Section 5382(a)'s direction that "each senior executive shall be paid at one of the rates" repealed the Section 304(a) pay limitation as to those executives whose scheduled rates of basic pay in SES exceeded the rates they were paid prior to the conversion of their positions to SES. This claim fails also because Section 5382(b) modifies this Section 5382(a) direction. Section 5382(b) prohibits the application to SES of only two pay limitations, those in 5 U.S.C. §§ 5308 and 5373. In making this specific and narrow prohibition, Congress clearly expressed its intent that other pay limitations, including that in Section 304(a), would apply to SES. Far from constituting a repeal of Section 304(a), then, Section 5382 is actually an endorsement of the application to SES of that salary limitation.

 There is also no basis for deciding that Section 5382 impliedly repealed the Section 304(a) pay limitation. A later statute may be found impliedly to repeal an earlier one only when the two statutes are in irreconcilable conflict. `Hines, Inc. v.

United States, 551 F.2d 717 (6th Cir.1977). But there is no conflict between the two provisions under review here.[9] As shown already, Section 5382 was intended to operate within the strictures of Section 304(a)'s pay limitation, so that while "Sec. 304(a) prohibited salaries in excess of level V [of the Executive Schedule, Sec. 5382 it] permits [but does not require] salaries up to level IV." 562 F.Supp. at 344.

**B. Count 2: FY 1980 (October 1, 1979 through September 30, 1980)**

 On October 9, 1979, pursuant to 5 U.S.C. § 5382(b) (reproduced *supra* at note 2), the President adjusted the rates of basic pay for SES,[10] increasing by approximately 5.6 to 7 percent the scheduled rates of basic pay previously established.[11] Since the FY 1979 pay limitation expired on September 30, 1979, there was apparently no bar, except 5 U.S.C. § 5382(b)'s (Section 5382(b)) Executive Schedule level IV cap, to paying SES members at the new scheduled rates immediately.

However, on October 12, 1979, a new salary limitation was enacted in P.L. 96–86 § 101(c), for FY 1980.[12] On the basis of

```
SES–1 = $44,756
SES–2 = $46,470
SES–3 = $48,250
SES–4 = $50,100
SES–5 = $51,450
SES–6 = $52,800
```

*Id.*

9. The existence of a conflict is prerequisite as well to deciding that a more specific statute prevails over one which is more general. *Morton v. Mancari*, 417 U.S. 535, 550–555, 94 S.Ct. 2474, 2482–2485, 41 L.Ed.2d 290; *United States v. Ohio Valley Company, Inc.*, 510 F.2d 1184, 1189 (7th Cir.1975). Because there was no conflict between Section 5382 and Section 304(a), it is not necessary to determine which of the two statutes was the more specific. Nevertheless, like the district court, this Court finds unpersuasive plaintiffs' claim that Section 5382 is the more specific provision. See 562 F.Supp. at 344 and n. 12.

10. These rates for FY 1980, adjusted on October 9, 1979, were:

```
SES–1 = $47,889
SES–2 = $49,499
SES–3 = $51,164
SES–4 = $52,884
SES–5 = $54,662
SES–6 = $56,500
```

Exec. Order 12,165, 44 Fed.Reg. 58,671 reprinted in 5 U.S.C. § 5382 at 184 (1980).

11. The SES rates initially established for FY 1979 were:

12. The second and third paragraphs of Section 101(c), the only provision, of that section relevant here, provide as follows:

For the fiscal year 1980, funds available for payment to executive employees, which includes Members of Congress, who under existing law are entitled to approximately 12.9 percent increase in pay, shall not be used to pay any such employee or elected or appointed official any sum in excess of 5.5 percent increase in existing pay and such sum if accepted shall be in lieu of the 12.9 percent due for such fiscal year.

*Provided further* That, for the purpose of carrying out this provision and notwithstanding the provisions of the Federal Pay Comparability Act of 1970 [5 U.S.C. Secs. 5301–08], the Executive Salary Cost-of-Living Adjustment Act [5 U.S.C. Sec. 5318], or any other related provision of law, which would provide

this salary limitation, the OPM continued to cap SES members' salaries at the Executive Schedule level V rate. This rate had been raised to $50,112.50 (the FY 1980 rate) from $47,500 (the FY 1979 rate). 562 F.Supp. at 341. As a result of OPM's decision, executives at SES levels 1 and 2 were paid at their scheduled rates but executives at SES levels 3 through 6 were paid at $50,112.50 (the level V rate) instead of at their scheduled rates.

Plaintiffs contend that the application of the Section 101(c) limitation to SES was improper because by its terms the limitation did not apply to them.[13] Consequently, they contend that SES salaries should have been subject only to the Executive Schedule level IV cap contained in Section 5382(b). Since the rate payable for level IV in FY 1980 was $52,750 (Govt.App. 47), applying only the Section 5382(b) cap to SES would result in executives at SES levels 1, 2, and 3 being paid their scheduled rates and executives at SES levels 4, 5, and 6 being paid $52,750 instead of their scheduled rates.

The district court, relying largely on Section 101(c)'s legislative history, determined that the Section 101(c) limitation applied to SES. 562 F.Supp. at 347. We cannot agree.

Plaintiffs' argument is simple and brief. They contend that the second paragraph of Section 101(c) does not describe them. Paragraph 2 provides that federal executives "who under existing law are entitled to approximately 12.9 percent increase in pay" for FY 1980 shall receive instead increases of no more than 5.5 percent. Section 101(c), *supra*, note 12. Plaintiffs are correct in this contention. The "approximately 12.9 percent" figure in Section 101(c) apparently was derived by combining annual salary increases for FY 1979 and FY 1980 authorized for General Schedule employees under the Federal Pay Comparability Act of 1970, 5 U.S.C. §§ 5301–5308, and for Executive Schedule employees under the Executive Salary Cost-of-Living Adjustment Act, 5 U.S.C. § 5318.[14] See Pl.Br. 43–44; Def.Br. 7. See also *United States v. Will*, 449 U.S. 200, 208, 101 S.Ct. 471, 477, 66 L.Ed.2d 392. SES salaries were not adjusted pursuant to either of these statutes but instead were adjusted only at the discretion of the President, see 5 U.S.C. § 5382(c). Since SES members were not covered by the Acts that authorized the 12.9 percent increase referred to in Section 101(c), it is clear that they were not covered by the Section 101(c) salary limitation either.

There is also another reason for our conclusion that Section 101(c) does not apply to SES. By no method of calculations were SES members entitled in FY 1980 to salary increases of approximately 12.9 percent. If SES scheduled rates for FY 1979 and 1980 are compared (see *supra*, notes 10 and 11), even without taking account of the Section 5382(b) level IV cap, executives could receive increases of between 5.6 and 7 percent. If SES scheduled rates for FY

---

an approximate 12.9 percent increase in pay for certain Federal officials for pay periods beginning on or after October 1, 1979, * * * the provisions of section 304 of [Public Law 95–391], which limit the pay for certain Federal offices and positions, shall apply to funds appropriated by this joint resolution or any Act for the fiscal year 1980, except that in applying such limitation the term "at a rate which exceeds by more than 5.5 percent the rate" shall be substituted for the term "at a rate which exceeds the rate" where it appears in subsection (a) of such section for the purpose of limiting pay increases to 5.5 percent.

**13.** Plaintiffs also argue, alternatively, that if the limitation applied to them, their actual salary rates were miscalculated. Because of our con-

clusion as to the plaintiffs' first argument, we do not reach their second one.

**14.** The actual 12.9 percent figure is computed by adding the 7 percent salary increase approved for FY 1980 before the Section 101(c) limitation took effect, to federal salaries to which the 5.5 percent FY 1979 increase (deferred by P.L. 95–391 until the P.L. 95–391 limitation expired on September 30, 1979) had been added. This compounding of the increases resulted in a combined 12.9 percent increase and explains the 0.4 percent difference between the sum of 7 and 5.5 percent on one hand and 12.9 percent on the other. *United States v. Will*, 449 U.S. 200, 208 n. 5, 101 S.Ct. 471, 477 n. 5, 66 L.Ed.2d 392.

1980 (see *supra,* note 10), subject to the Section 5382(b) cap of $52,750, are compared with rates actually paid SES executives in FY 1979,[15] SES plaintiffs would be entitled to increases of between 6.5 and 11 percent. Even if the Section 5382(b) cap is disregarded (an approach which is incorrect because Section 101(c) refers to increases to which executives are entitled and SES executives are not entitled to increases beyond the Section 5382(b) cap), the FY 1980 increases do not fall within the "approximately 12.9 percent" range mandated by Section 101(c). Comparing 1980 scheduled rates, without regard to the Section 5382(b) cap, with 1979 payable rates results in increases close to 7 percent for SES levels 1 through 3 and increases of approximately 11.3, 15, and 19 percent for levels 4, 5, and 6 respectively.

The government suggested at oral argument that Paragraph 2 of Section 101(c) applied to SES members indirectly because increases in Executive Schedule rates, to which SES salaries are tied by the Section 5382(b) cap, would result in increases in the 12.9 percent range. However, this flies in the face of the facts presented to us, and the government has not demonstrated another calculation method using the facts in the record which would result in a 12.9 percent increase for SES members.

The government also points to the third paragraph of Section 101(c) to support its position that SES members are described in Section 101(c). That paragraph provides that:

> *Provided, further,* That for the purpose of carrying out this provision and notwithstanding the provisions of the Federal Pay Comparability Act of 1970,

the Executive Salary Cost-of-Living Adjustment Act, or any other related provision of law, which would provide an approximately 12.9 percent increase in pay for certain Federal officials for pay periods beginning on or after October 1, 1979, * * * the provisions of section 304 of the Legislative Branch Appropriation Act, 1979, which limit the pay for certain Federal offices and positions, shall apply to funds appropriated by this joint resolution or any Act for the fiscal year 1980, except that in applying such limitation the term "at a rate which exceeds by more than 5.5 percent the rate" shall be substituted for the term "at a rate which exceeds the rate" where it appears in subsection (a) of such section for the purpose of limiting pay increases to 5.5 percent.

The government contends that the clause "the provisions of Section 304 * * * shall apply", coupled with the second paragraph's indirect application to SES, establishes that SES executives were subject to the Section 101(c) salary limitation.

Although the district court found this argument persuasive (562 F.Supp. at 347), we reject it. As already explained, the government has not provided any concrete support for its theory that SES members are described indirectly in Paragraph 2 of Section 101(c). This lack of concrete support is fatal to the government's claim. While it is true that a clause in Paragraph 3 indicates that Section 304 should continue in effect, that clause must be analyzed in context rather than in a vacuum. The district court apparently did not consider this clause in its proper context, which is at

---

**15.** FY 1979 payable rates for SES were as follows:

| | |
|---|---|
| SES-1 | = $44,756.00 |
| SES-2 | = $46,470.00 |
| SES-3 | = $47,500.00 |
| SES-4 | = $47,500.00 |
| SES-5 | = $47,500.00 |
| SES-6 | = $47,500.00 |

(Govt.App. 46). The only exception to these rates was made for executives who converted to SES from Executive Schedule level IV. Upon conversion, they continued to receive the rate payable for level IV which in FY 1979 was $50,000. *Id.* Although the briefs are somewhat confusing on this point, at oral argument plaintiffs made clear that executives who transferred from level IV are not part of the plaintiff class. In any case, even if these executives were part of the class, it appears unlikely that they would be entitled to any significant recovery. To the extent that they continued to be paid the rate payable for level IV of the Executive Schedule, they would have already been paid all they are entitled to be paid under Section 5382(b).

least Paragraphs 2 and 3 of Section 101(c) (*supra*, note 12).

Paragraph 3's substantive provisions are prefaced *"Provided further,* That for the purpose of carrying out this provision * *."* This introductory clause ties Paragraph 3 as a subdivision to Paragraph 2, so that Paragraph 3 applies only to executive employees already described in Paragraph 2, *i.e.,* those who but for Section 101(c) would have been entitled to 12.9 percent salary increases for FY 1980. Since Paragraph 2 does not describe SES executives, Paragraph 3 cannot apply to them.

The government has not suggested any other plausible interpretation of Paragraphs 2 and 3, nor has it argued that Paragraph 3's tie to Paragraph 2 is an ambiguous or equivocal one. In fact, the tie is not ambiguous. The clause, "for the purpose of carrying out this provision," clearly indicates Congress' intent to marry the two paragraphs. "[T]his provision" logically can refer only to Paragraph 2 of Section 101(c). Neither Section 101(c) itself nor Section 101 nor even Pub.L. 96–86 includes any general purpose statement to which the clause, might otherwise refer. Furthermore, Section 101(c), Paragraphs 2 and 3 are the only parts of Pub.L. 96–86 which discuss salary limitations for federal executives.[16] Even assuming Paragraph 3 may be considered alone as a separate provision unrelated to Paragraph 2, the government's argument must fail because by its own terms Paragraph 3's application is limited to Federal officials who would otherwise be entitled to a 12.9 percent salary increase. See *supra* note 12. As shown

above, SES members simply were not part of that class.

■ Finally, the government suggests in its brief, and the district court agreed, that a Conference Report[17] for Pub.L. 96–86 makes clear that Section 101(c) applies to the SES. This Report was issued in connection with the Conference's presentation to Congress of the compromise version of Pub.L. 96–86 which was ultimately passed and is now under review here. See 562 F.Supp. at 346. To the extent that this report indicates that Section 101(c) was expected to apply to the SES, it is in conflict with the clear, unambiguous and unequivocal provisions of that Section, which applies only to federal executives otherwise eligible for 12.9 percent increases, a group which did not include SES. Review of a Conference Report, as the most reliable form of legislative history, often may be helpful for clarifying the meaning of a statute which is ambiguous, at least so long as the statute at least "imperfectly" expresses the message contained in the report, *Miller v. Federal Mine Safety and Health Review Commission,* 687 F.2d 194, 195 (7th Cir.1982). However, even this form of legislative history may not be used to overrule a clear direction contained in the statute itself. See, *e.g., Aloha Airlines, Inc. v. Director of Taxation,* —— U.S. ——, 104 S.Ct. 291, 294, 78 L.Ed.2d 10; *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668; *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575; *Estate of Cowser v. C.I.R.,* 736 F.2d 1168, at 1171 (7th Cir.1984); *Mills v. United States,* 713 F.2d 1249, 1252 (7th Cir.1983). See also

---

**16.** However, the fourth paragraph of Section 101(c) provides that "additional payment[s] under existing law" are not salary increases and Section 112, Pub.L. 96–86, limits the amount of funding available for executive branch travel expenses.

**17.** In pertinent part, the Conference Report provides as follows:

The conferees wish to note that by continuing the application of Sec. 304 of the Legislative Branch Appropriation Act, 1979 [Pub.L. 95–391], the joint resolution ensures that many individuals in positions which were

transferred to the new Senior Executive Service (SES) may not receive pay increases of more than 5.5 percent. Although under the Civil Service Reform Act the maximum rate of pay for the SES is set at level IV of the Executive Schedule, those positions transferred into the SES earlier this year which on September 30, 1978, were subject to the level V ceiling will continue to be subject to the level V ceiling.

H.R.Rep. No. 96–513, 96th Cong., 1st Sess., at 3 (1979).

Luneburg, *Justice Rehnquist, Statutory Interpretation, the Policies of Clear Statement, and Federal Jurisdiction*, 58 Ind.L.J. 211, 215 (1982) ("[T]he exclusive means by which a legislature may create new law is by enacting a statute."). If Congress intended to apply the FY 1980 salary limitation to a broader group of federal executives than it specified in the statute, Congress had the power to draft the statute to do so. Cf. *Estate of Cowser, supra*, 736 F.2d at 1171. However, we may not now redraft the provision. *Id.*

Under these circumstances, this Court holds that the salary limitation of Section 101(c), Pub.L. 96–86, is inapplicable to plaintiffs. Consequently, plaintiffs are entitled to recover the difference between the salaries they actually received for FY 1980 and the salaries they would have received had they been limited only by Section 5382(b)'s Executive Schedule level IV cap.

**C. Count 3: FY 1981 (October 1, 1980 through September 30, 1981)**

■ Three joint resolutions were enacted during FY 1981 for the purpose of freezing federal employees' salaries at rates payable on September 30, 1980.[18] Plaintiffs concede that these resolutions required the freezing of SES members' salaries. However, they contend that the freeze was applied to an incorrect base. In short, they claim that some SES salary rates, as actually paid on September 30, 1980, were artificially reduced because the FY 1980 salary limitation (Pub.L. 96–86, § 101(c)) was improperly applied to SES salaries. But for imposition of the FY 1980 salary limitation, SES salaries on September 30, 1980 would have been capped at the Executive Schedule level IV rate of $52,750. Instead, SES salaries were improperly capped on September 30, 1980 at the lower Executive Schedule level V rate of $50,112.50.

The district court determined that plaintiffs' salaries for FY 1981 were frozen at

the proper rate. This determination was based squarely on that court's decision that Pub.L. 96–86, Sec. 101(c) "operated to cap SES salaries at level V during fiscal year 1980." 562 F.Supp. at 348. Since we hold that Pub.L. 96–86, Section 101(c) had no application to plaintiffs, it follows that plaintiffs' salaries for FY 1981 were frozen at improper rates, to the extent that the plaintiffs' salaries were frozen at Executive Schedule level V rates rather than at rates for Executive Schedule level IV.

Therefore, the order of the district court granting defendant's motion for summary judgment and denying plaintiffs' motion for summary judgment is affirmed in part and reversed in part, and the cause is remanded to the district court for proceedings consistent with this opinion.

**18.** Pub.L. 96–369 was passed on October 1, 1980; Pub.L. 96–536 was passed on December 16, 1980; Pub.L. 97–12 was passed on June 5, 1981.