George SQUILLACOTE, Martin M. Arlook, Louis V. Baldovin, Jr., Harold A. Boire, Michael M. Dunn, Arthur Eisenberg, Emil C. Farkas, Robert S. Fuchs, Bernard Gottfried, Roger W. Goubeaux, Thomas C. Hendrix, Peter W. Hirsch, Wilford W. Johansen, Bernard Levine, William T. Little, Thomas W. Seeler, Henry Shore, Daniel Silverman, Joseph H. Solien, Robert J. Wilson and Glenn A. Zipp, on their own behalf and on behalf of all persons similarly situated, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. Nos. 81–C–1553, 85–C–1567.

United States District Court, E.D. Wisconsin.

Dec. 17, 1985.

Kevin M. Forde and Katrina Veerhusen, Kevin M. Forde, Ltd., Richard J. Prendergast, Richard J. Prendergast, Ltd., Chicago, Ill., for plaintiffs.

Joseph P. Stadtmueller, U.S. Atty., Milwaukee, Wis., Judith F. Ledbetter and Arthur R. Goldberg, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Plaintiffs commenced their original class action lawsuit alleging that members of the Senior Executive Service ("SES") had been underpaid from July 13, 1979 through September 30, 1981. This court granted the government's motion for summary judgment on all three counts. *Squillacote v. United States,* 562 F.Supp. 338 (E.D.Wis. 1983). The Seventh Circuit reversed this Court's decision as to the second and third counts, holding that the plaintiffs were entitled to recover for the period running from October 1, 1979 until September 30, 1981. *Squillacote v. United States,* 739 F.2d 1208 (7th Cir.1984), *reh. denied,* 747 F.2d 432, *cert. denied,* — U.S. ——, 105 S.Ct. 2021, 85 L.Ed.2d 302 (1985). The court of appeals remanded the case for proceedings consistent with its opinion, and on December 6, 1984, this Court entered judgment in favor of the plaintiffs. The parties disagree about the effect of the circuit court's opinion as to two issues, and the plaintiffs' counsel have applied for an award of attorneys' fees and costs.

In addition, at a hearing held November 15, 1985, this Court certified a second class action involving the same dispute between the parties for the first three months of fiscal year 1982, *Squillacote v. United States,* No. 85–C–1567 (E.D.Wis., filed Nov. 15, 1985), (*Squillacote II*), and ordered that the second action be consolidated with the original action. (*Squillacote I*). Pursuant to the parties' stipulation, the Court immediately entered judgment as to the first count of the *Squillacote II* complaint. Count II of that complaint involves the same disputed issues that are now before this court in *Squillacote I,* and the parties have agreed that the government shall not be required to respond to that complaint until the matters in dispute in *Squillacote I* have been fully litigated.

The parties have fully briefed the issues that are in dispute. They are: (1) whether class members who were in pay grades SES–1, SES–2, and SES–3 should have had their fiscal year 1981 pay frozen at what they should have been paid on September 30, 1980, regardless of what their scheduled rate of pay for fiscal year 1981 was, or whether their fiscal year 1981 pay should have been what their scheduled rate of pay was for 1981, subject to the limitation that such rate could not exceed that paid for Executive Schedule Level IV; and (2) whether sovereign immunity shields the government from an award to the plaintiffs of post-judgment interest from the date of this court's December 6, 1984, judgment. Finally, plaintiffs' counsel have presented the court with a detailed analysis of their fees and costs in this matter and the period for class members to comment on that application has expired. The court will decide the questions in the order they are presented.

## BACK PAY FOR FISCAL YEAR 1981

The answer to this question is determined by the Seventh Circuit's opinion in *Squillacote I,* 739 F.2d at 1208, and three resolutions passed by Congress during fiscal year 1981. Pub.L. No. 96–369, 94 Stat. 1351 (1980); Pub.L. No. 96–536, 94 Stat. 3166 (1980); Pub.L. No. 97–12, 95 Stat. 14 (1980). The parties disagree as to how these authorities answer the question presented.

In *Squillacote I,* the court of appeals held, among other things, that the resolutions listed above "were enacted during FY 1981 for the purpose of freezing federal employees' salaries at rates payable on September 30, 1980." 739 F.2d at 1219. The court also found that in fiscal years 1980 and 1981 the government had improperly capped plaintiffs' pay at the lower rates paid for Executive Schedule Level V rather than at the higher rate payed for Executive Schedule Level IV. 739 F.2d at 1219. This court must determine if class members whose pay had not yet reached the Level IV cap as of September 30, 1980, were entitled to receive their scheduled increase in pay up until the point it hit the Level IV cap.

The government points to the Seventh Circuit's language in *Squillacote I* that federal employees' fiscal year 1981 salaries were to be frozen "at rates payable on September 30, 1980," 739 F.2d at 1219, and argues that means that SES members are limited to what they should have been receiving as of that date. The government also claims that Congress intended to freeze salaries, and that allowing plaintiffs raises would have been contrary to this intent.

Plaintiffs argue that the matter is governed by the doctrine of *res judicata* and direct this court's attention to that portion of the court of appeals' decision stating "that plaintiffs' salaries for FY 1981 were frozen at improper rates, to the extent that the plaintiffs' salaries were frozen at Executive Schedule level V rates rather than at rates for Executive Schedule level IV," 739 F.2d. at 1219, and the fact that this court's judgment of December 6, 1984, contained similar language. The plaintiffs contend that the freeze at September 30, 1985, rates does not kick in until the class member has reached the Executive Schedule level IV ceiling. Thus, class members whose rates of pay in 1980 had not yet reached the cap would have been entitled to receive their scheduled 1981 raises up until the point the scheduled rate equalled the Executive Schedule level IV cap.

■ The controlling resolutions incorporate a House Resolution that froze SES fiscal year 1981 salaries at "the rate (or maximum rate, if higher) of salary or basic pay payable for such office or position for September 30, 1980...." H.R. 7593, § 306(a) (1980). The government argues that the phrase "or maximum rate, if higher" can only be interpreted to mean that no person can be paid more than his scheduled rate *or* the maximum rate if that person's salary has already reached the limit. The government's reading of the statute is unreasonable.

The plaintiffs argue that the question has already been conclusively decided and point out that the government's position is inconsistent with its own previous payment practices—the Office of Personnel Management raised the salaries of certain SES members above that which they were receiving on September 30, 1980. More importantly, the plaintiffs correctly state that if Congress had merely intended to freeze salaries at whatever level the employee received on September 30 of 1980, then the reference to the maximum rate would have been superfluous. This court therefore finds that SES personnel were entitled to be paid their scheduled rates up to the Executive Schedule level IV cap.

### POST–JUDGMENT INTEREST

■ Plaintiffs also seek to recover interest on this court's December 6, 1984, judgment. Although equitable considerations favor plaintiffs' position, the government points out that absent an express waiver of its sovereign immunity it is not liable for any post-judgment interest. Plaintiffs' attempts to find such authority have been unsuccessful.

Plaintiffs' contention that 28 U.S.C. § 1961 provides an independent waiver of immunity for post-judgment interest is unsupported by either that statute or case law. *Arvin v. United States,* 742 F.2d 1301 (11th Cir.1984); *Holly v. Chasen,* 639 F.2d 795 (D.C.Cir.), *cert. denied,* 454 U.S. 822, 102 S.Ct. 107, 70 L.Ed.2d 94 (1981). In each of those cases the courts of appeal

held that 28 U.S.C. § 1961 failed to provide a waiver of the government's immunity from the award of interest on attorneys' fees.

In *Arvin*, the court expressly rejected plaintiffs' proffered interpretation of 28 U.S.C. § 2516 as providing the necessary waiver of immunity for actions filed in district courts. 742 F.2d at 1304–5. Both parties agree that the plaintiffs would have been entitled to interest under that section had they obtained judgment from the court of claims or the Court of Appeals for the Federal Circuit. The plaintiffs, however, chose to file suit in this forum where there is no explicit waiver for similar judgments entered by a district court.

Because the plaintiffs failed to present this court with authority for the proposition that Congress explicitly waived governmental immunity from post-judgment interest in this court on this claim, the court is unable to award it.

### ATTORNEYS' FEES

Plaintiffs' attorneys have presented this Court with their application for fees and expenses incurred in successfully prosecuting this action. The government takes no position on this question because any amount awarded will come from the class' recovery. Class members were given notice of the petition and an opportunity to respond to the request for fees and costs. Although 7,865 class members returned forms to the Office of Personnel Management verifying that they were entitled to backpay, only thirteen took the time to inform the court of their views on the question of attorneys' fees. Petitioners request for $1,250,000 in attorneys' fees and $9,379.64 in costs and expenses will be granted.

Six of the thirteen class members wrote to support petitioners' application in the full amount. Five objected to the amount requested and suggested that, in any event, the government should be obligated to pay the fees. Two other class members objected only as to the amount, and one of those two stated he was so strongly op-posed to the request that he would prefer to receive nothing himself rather than see it paid. Although the court can understand how someone unfamiliar with the going rates in the legal profession might view the request as out of line, a review of the relevant factors for determining an appropriate fee reveals that it is not.

The Seventh Circuit Court of Appeals recently addressed the question of an award of attorneys' fees and endorsed the method the Supreme Court used in *Hensley v. Eckert*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *Lynch v. Milwaukee*, 747 F.2d 423 (1984), the Court stated:

"... The initial step is to multiply the number of hours reasonably expended by a reasonable hourly rate. 103 S.Ct. at 1939. The resultant figure, which has often been referred to as the "lodestar" amount, may then be modified upward or downward, depending on the following considerations:

1. the time and labor required;

2. the novelty and difficulty of the questions;

3. the skill requisite to perform the legal service properly;

4. the preclusion of employment by the attorney due to acceptance of this case;

5. the customary fee;

6. whether the fee is fixed or contingent;

7. time limitations imposed by the client or the circumstances;

8. the amount involved and the results obtained;

9. the experience, reputation, and ability of the attorneys;

10. the "undesirability" of the case;

11. the nature and length of the professional relationship with the client; and

12. awards in similar cases."

747 F.2d at 426, (footnote omitted) (citing *Hensley v. Eckert* as 103 S.Ct. at 1937 n. 3).

Petitioners' time records and affidavits show that there was no unnecessary duplication of effort and that the time spent was

of direct benefit to the class. Given the complexity and history of this case, the Court finds it reasonable that petitioner Forde has, and will have, devoted 687 hours to this case, and that petitioner Prendergast has, and will have, devoted 1,091 hours to this case. The same is true for the 952 hours of associate time and the 783 hours requested for law clerks.

The Court further finds that the requested rates of compensation in this matter are reasonable. Kevin M. Forde seeks reimbursement at the rate of $175 per hour and Richard J. Prendergast at the rate of $150 per hour. Petitioners seek compensation for associate work, principally done by Katrina Veerhusen, at the rate of $110 per hour, and law clerk time has been billed at a rate of $40 an hour.

The high-quality work of petitioners Forde and Prendergast has been recognized before, *Will v. United States,* 90 F.R.D. 336, 343 (N.D.Ill.1981), and was reflected in their efforts in this case. It is not necessary for this Court to list their impressive credentials or their past success at class action lawsuits. The requested rates reflect their normal hourly fees and are not out of line with rates attorneys of similar skill would charge. Katrina Veerhusen is an associate of Kevin M. Forde, Ltd. and also has had experience working on major class action lawsuits. Like Forde and Prendergast she is a former judicial clerk. Her billing rate of $110 is reasonable for this type of work and reflects her normal hourly fee. Finally, the Court finds

that a rate of $40 per hour for law clerk time is reasonable.

The Court must multiply the number of hours reasonably expended by the corresponding billing rates to obtain a "lodestar" amount. Calculation of the relevant numbers in the present case yields an amount of $419,840.* Petitioners argue that this is an appropriate case for an upward modification of the lodestar and request an award of $1,250,000, roughly three times the lodestar.

The twelve factors listed above from *Lynch,* 747 F.2d at 426, are to be utilized in determining what adjustment, if any, should be made in the lodestar before awarding attorneys' fees. They are merely guidelines, however, and are not always consistently applied. *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* 776 F.2d 646, 651, note 3 (7th Cir.1985). The Court should not make any adjustment if the lodestar already reflects those factors. October 21, 1985, at p. 652. The list of twelve factors also includes related considerations. For instance, the time and labor required is reflected both in the amount of hours that make up the lodestar and in factor four, whether or not it precluded other employment. Factor five, the customary fee, is unavoidably related to factor twelve, awards in similar cases. The skill requisite to perform the legal service properly, factor three, is related to the novelty and difficulty of the questions, factor two.

■ Although the Court finds that each of the factors listed would tend to support petitioners' application, the Court is espe-

* PETITIONERS' TIME THROUGH AUGUST 12, 1985

| Petitioner | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Kevin M. Forde | 627.00 | $175.00 | $109,725.00 |
| Richard J. Prendergast | 1025.75 | 150.00 | 153,862.50 |
| Mary Anne Mason | 19.00 | 110.00 | 2,090.00 |
| Katrina Veerhusen | 721.75 | 110.00 | 79,392.50 |
| James Prendergast | 7.50 | 110.00 | 825.00 |
| Joseph E. Tighe | 13.50 | 110.00 | 1,485.00 |
| Law Clerks | 642.75 | 40.00 | 25,710.00 |
| | | Total | $373,090.00 |

ESTIMATED FUTURE TIME REQUIRED TO PREPARE AND FILE VARIOUS MEMORANDA OF LAW

| | Hours | Hourly Rate | Total |
|---|---|---|---|
| Kevin M. Forde | 35.00 | $175.00 | $ 6,125.00 |
| Richard J. Prendergast | 40.00 | 150.00 | 6,000.00 |
| Associates | 90.00 | 110.00 | 9,900.00 |
| Law Clerks | 40.00 | 40.00 | 1,600.00 |
| | | | $ 23,625.00 |

ESTIMATED FUTURE TIME REQUIRED FOR ADMINISTRATIVE TASKS

| | Hours | Hourly Rate | Total |
|---|---|---|---|
| Kevin M. Forde | 25.00 | $175.00 | $ 4,375.00 |
| Richard J. Prendergast | 25.00 | 150.00 | 3,750.00 |
| Associates | 100.00 | 110.00 | 11,000.00 |
| Law Clerks | 100.00 | 40.00 | 4,000.00 |
| | | | $ 23,125.00 |
| | | Total Lodestar | $419,840.00 |

**132**

cially persuaded by the successful outcome and the fact that this case was taken on a contingent basis. If the plaintiffs had lost, their attorneys would have been paid nothing. Plaintiffs unsuccessfully sought administrative resolution of their claims through the National Labor Relations Board and the Office of Personnel Management. Two associations of federal employees refused to bring the case. Nonetheless, petitioners agreed to take the case on a contingent basis with the fee, if any, to be set by the Court in the event of a successful outcome.

This Court's view of the likelihood of success was reflected in an earlier opinion that granted summary judgment against petitioners' clients. *Squillacote v. United States*, 562 F.Supp. 338 (E.D.Wis.1983). Despite that earlier setback petitioners successfully argued the class' cause in the appellate courts. As a result of petitioners' efforts in *Squillacote I* and *Squillacote II* the class will recover back pay and benefits approaching $40,000,000. Attorneys' fees in the amount of $1,250,000 are reasonable especially when one considers that they might have received nothing for their efforts. A multiplier of three is appropriate in that it represents a relatively small percentage of the total recovery.

### ORDER

IT IS ORDERED that petitioners' request for fees and costs is granted. The firm of Kevin M. Forde, Ltd., is awarded $697,250 in fees and $6,160.54 for costs and expenses. The firm of Richard J. Prendergast, Ltd. is awarded $552,750 in fees and $3,219.10 for costs and expenses.

IT IS FURTHER ORDERED that each class member is entitled to recover for fiscal year 1981 the difference between the salary received and the scheduled SES salary for that year up to the rate for level IV of the Executive Schedule.

IT IS FURTHER ORDERED that the class is not entitled to post-judgment interest as the government has not waived its sovereign immunity to such an award.