**DEMETER, INC., an Indiana corp., Cargill, Inc., a Delaware corp., Continental Grain Co., a Delaware corp., Bunge Corporation, a New York corp., The Pillsbury Company, a Delaware corp., Illinois Cereal Mills, Inc., a Delaware corp., Fasco Mills Co., an Illinois corp., McLay Grain Co., an Illinois corp., Gerstenberg and Tucker, Inc., an Illinois corp., Plaintiffs,**

v.

**Larry WERRIES, Director of the Department of Agriculture of the State of Illinois, Defendant.**

No. 85–3536.

United States District Court,
C.D. Illinois,
Springfield Division.

Jan. 7, 1988.

---

Harvey T. Stephens and Edward J. Cunningham, Springfield, Ill., for plaintiffs.

Frank A. Hess, Raymond J. Watson, Jr. and Robert Wagner, Asst. Attys. Gen., Springfield, Ill., for defendant.

William Gillon, Surell Brady and Felix V. Baxter, Washington, D.C., for U.S. Secretary of Agriculture, amicus curiae.

## OPINION

MILLS, District Judge:

We must declare an act of the Illinois General Assembly to be unconstitutional.

The Plaintiffs are nine federally licensed warehousemen engaged in grain warehousing activities in Illinois. The Defendant is Director of the Department of Agriculture of the State of Illinois and is entrusted by state statute[1] with ensuring the participation of federally licensed warehousemen in the Illinois grain insurance program.

Here, Plaintiffs seek to enjoin the Director from commencing any action against the Plaintiffs for Plaintiffs' failure to comply with amendments made to Ill.Rev.Stat. ch. 114, ¶ 704 & ch. 111, ¶ 306 (1985), by Illinois Public Act No. 84–156. Plaintiffs maintain that these amendments to the Illinois Grain Insurance Act and the Illinois Grain Dealers Act are unconstitutional as they are preempted by the United States Warehouse Act and, therefore, must be

---

1. *See* Ill.Rev.Stat. ch. 114, ¶¶ 703, 704 (1985).

struck down as violative of the Supremacy Clause of the United States Constitution.

At a preliminary hearing before this Court, it was ordered that the Department of Agriculture be preliminarily enjoined from enforcing the provisions of the amendments to the acts as against the Plaintiffs and from revoking or suspending their grain dealers' licenses or taking any action against them for failure to pay assessments under the Illinois Grain Insurance Act. It was further ordered that an escrow account be established into which the Plaintiffs were to pay their assessments pending disposition of this suit on the merits.

Plaintiffs now move for summary judgment on the record before the Court.

It is allowed.

## I. FACTS

### A. Plaintiffs

Plaintiffs are grain warehousemen licensed under the United States Warehouse Act (USWA). 7 U.S.C. § 241 (1982). All Plaintiffs operate within the State of Illinois. Plaintiffs have held federal warehouse licenses under the USWA for a number of years prior to the enactment of the amendments to the Illinois Grain Dealers Act and the Illinois Grain Insurance Act. All Plaintiffs are in good standing under the federal licenses and are bonded pursuant to the federal statute to secure performance of their obligations as warehousemen.[2] In addition to being federally licensed grain warehousemen, all Plaintiffs are grain dealers licensed under the Illinois Grain Dealers Act. Ill.Rev.Stat. ch. 111, ¶ 301 (1985).

### B. Background Legislation

To obtain a license in Illinois, a grain dealer must join the Illinois Grain Insurance Fund by the payment of an amount based on the percentage of the aggregate dollar amount paid by the dealer to producers during the dealer's past fiscal year. *See* Ill.Rev.Stat. ch. 111, ¶ 303 (1985); *Id.* ch. 114, ¶ 705. Prior to 1985, the Illinois

Grain Dealers Act did not subject federal warehousemen to the Illinois Grain Insurance Act. However, by Public Act 84–156, the Illinois legislature amended § 6 (Ill. Rev.Stat. ch. 111, ¶ 306) of the Grain Dealers Act to read:

> If the Department [of Agriculture] finds that a grain dealer is licensed as a grain warehouse under the United States Warehouse Act and does not satisfy the requirements of Section 4 [Ill.Rev.Stat. ch. 114, ¶ 704] of The Illinois Grain Insurance Act the Director shall suspend or revoke such license until such time as the grain warehouse complies with Section 4 of The Illinois Grain Insurance Act.

Public Act No. 84–156, § 1 (amending Ill. Rev.Stat. ch. 111, ¶ 306 (1985)).

Prior to 1985, the Illinois Grain Insurance Act provided for permissive participation of any grain warehouse licensed under the USWA providing a cooperative agreement was signed. However, by Public Act No. 84–156, the Illinois legislature, in effect, made compliance mandatory by the above quoted amendment of § 6 of the Grain Dealers Act and by amending § 4 (Ill.Rev.Stat. ch. 114, ¶ 704) of the Illinois Grain Insurance Act. The Grain Insurance Act now provides:

> All grain warehouses located within the State of Illinois *shall* provide financial protection for claimants equal to the protection which is afforded claimants under this Act.
>
> If the Department [of Agriculture] finds that equal financial protection is not being provided to Illinois producers and claimants, the Director shall petition a court of competent jurisdiction to grant injunctive relief to require the particular grain warehouse to offer financial protection equal to the protection which is afforded claimants under this Act.

Public Act No. 84–156, § 2 (amending Ill. Rev.Stat. ch. 114, ¶ 704 (1985)) (emphasis added).

Thus, the Illinois legislature has established a requirement under ¶ 704 of the Grain Insurance Act which not only re-

---

**2.** *See* 7 U.S.C. § 247 (1982); *see also* 7 C.F.R.      §§ 736.13–736.17 (1987).

quires grain dealers to participate in the grain insurance fund, but further requires that all grain warehousemen located in Illinois provide financial protection for claimants equal to the protection which is afforded claimants under that Act. *See* Ill. Rev.Stat. ch. 114, ¶ 704 (1985). Under ¶ 705 of the Grain Insurance Fund Act, every grain dealer and warehouseman licensed by the State of Illinois is assessed a fee based upon the Public Grain Warehouse and Warehouse Receipts Act, Ill. Rev.Stat. ch. 114, ¶ 214.1 (1985), and the Illinois Grain Dealers Act, Ill.Rev.Stat. ch. 111, ¶ 300.01 (1985). This assessment is based on two calculations—one for grain dealers and one for grain warehousemen. All Plaintiffs have paid their grain dealer assessment without protest. Having refused to pay their warehouse assessments, Plaintiffs brought the instant suit to challenge the constitutionality of the above quoted sections of Public Act 84–156. Plaintiffs were ordered by this Court [3] to place the amount of such assessment in escrow pending the outcome of this litigation on the merits. In the same order the Department of Agriculture was enjoined from taking action against the Plaintiffs for nonpayment of the assessment.

## II. MERITS

■ It is the intent of the Illinois legislature, as manifested in Public Act No. 84–156, to require federally licensed warehousemen to either join the Illinois Grain Insurance Fund or to provide equal protection by supplying a bond in the total amount of their licensed capacity or collateral of an equal amount. *See* Ill.Admin. Code tit. 8, § 285.110. Further insight into the purposes behind the enactment of Public Act No. 84–156 are provided by Dean Sears, a representative of the Farm Bureau, who testified before the Agriculture Committee of the Illinois House of Representatives on June 4, 1985:

The purpose of this amendment is to give farmers and grain depositors in the State of Illinois equal protection from loss due to grain warehouse failure, whether that particular grain warehouse is federally licensed or state licensed. You may recall in '83 [sic] when you [the legislators] passed the Grain Insurance Fund Act to give protection to depositors in situations where grain elevators fail.... Under that act you required all state licensed grain dealers and warehousemen to come under the fund, which they have done. However, in relation to federally licensed warehouses, they were not required to come under the fund. There was a cooperative agreement that was entered into between the U.S.D.A. and State of Illinois which provided that they could come under if they so desire.... [A]pproximately half of them have chosen to come under the fund. So, I think that leaves approximately 80 or 82 federal warehouses that are still not under the grain insurance fund and they are, of course, governed by the Federal Surety Bond which we feel is woefully inadequate in relation to ... the loss that farmers could take.... So, in those situations [farmers dealing with federally licensed warehouses] we feel that the farmers are less adequately protected than in situations where they are dealing with an elevator under the grain insurance fund. So, in effect what this legislation is doing is bringing him [the federally licensed warehouseman] under the ... fund or making them [warehousemen] come up with security comparable to what the fund would give them.

*Hearings on S.497 Before the House Comm. on Agriculture,* 84th Gen. Assembly, 1985 Regular Sess. (1985) (statement of Dean Sears, representative of the Farm Bureau).

It is Plaintiffs' contention that, as federally licensed grain warehousemen, they have the right under the Supremacy Clause to be free from state regulation in their warehousing activities within Illinois by virtue of § 269 of the United States Warehouse Act. That section provides that "jur-

---

**3.** See this Court's order, entered April 7, 1986, granting a preliminary injunction enjoining the Department of Agriculture from taking action against Plaintiffs for failure to pay their assessments pending the outcome of this litigation on the merits.

isdiction and authority conferred upon the Secretary of Agriculture under this chapter shall be *exclusive* with respect to all persons securing a license hereunder so long as said license remains in effect." 7 U.S.C. § 269 (1982). Clearly, Plaintiffs are correct.

The appropriate test for application of the Supremacy Clause in the situation presented here was enunciated by the Supreme Court in *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). In *Rice*, the Court found that by the 1931 amendments to §§ 6 and 29 of the United States Warehouse Act, Congress ended the dual system of regulation provided by the original act and substituted an exclusive system of federal regulation of warehouses licensed under the federal act. The Court found persuasive the argument that the amendments should be construed to mean that the subjects which the Secretary's authority touches "may not be regulated in any way by any state agency, though the scope of federal regulation is not as broad as the regulatory scheme of the State and even though there is or may be no necessary conflict between what the state agency and the federal agency do." *Id.* at 229, 67 S.Ct. at 1151. Thus, the Court expressly rejected the argument that the state scheme should be allowed to "supplement" the federal act. *Id.* at 231, 67 S.Ct. at 1152. Quoting a Senate report, the Court stated that although operation under the act was optional, once a warehouseman "chose to be licensed under it, he would then 'be authorized to operate without regard to State acts and be solely responsible to the Federal Act.'" *Id.* at 233, 67 S.Ct. at 1153. Finally, the Court stated that "a licensee under the Federal Act can do business 'without regard to State acts'...." *Id.* at 234, 67 S.Ct. at 1154.

Having made the above findings, the Court in *Rice* stated: "The test, therefore, is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act. If it is, the federal scheme prevails though it is a more modest, less pervasive regulatory plan than that of the State." *Id.* at 236, 67 S.Ct. at 1155. Therefore, if Congress regulates the bonding of federally licensed warehousemen to secure performance—which is the matter on which Illinois asserts the right to act—then the federal scheme must prevail.

For purposes of the instant case, the answer under the *Rice* test is found in the USWA—§ 247 of Title 7 of the United States Code. Therein Congress has provided that each warehouseman "applying for a license to conduct a warehouse in accordance with this chapter shall, as a condition to the granting thereof, execute and file with the Secretary of Agriculture a good and sufficient bond to the United States to secure the faithful performance of his obligations as a warehouseman...." [4] Thus, Congress has already legislated on "the matter on which the state asserts the right to act" in the instant case.

According to the Supreme Court in *Rice*, such action is not allowed. Congress' regulation in the area of bonds to secure the performance of grain warehousemen precludes state action in the same area. Thus, the provisions of Public Act No. 84–156 mandating that federally licensed warehousemen join the Illinois Grain Insurance Fund or provide equal protection must give way to Congress' regulation of that area by virtue of the Supremacy Clause. U.S. Const. art. VI, cl. 2.

Defendant makes only one argument on the merits in his opposition to the motion for summary judgment. Defendant argues that "Public Act 84–156, when properly construed with all other laws regarding the grain industry and the practical effect thereof, is a regulation of grain dealing,

---

**4.** *See also* 7 C.F.R. § 736.13 (1987). This section allows federally licensed warehousemen to participate in an indemnity or insurance fund established and maintained by a state, in lieu of posting a bond securing performance with the Secretary of Agriculture. Presumably, the Illinois Grain Insurance Fund would qualify. The fact that this option is given is further evidence that Congress has preempted state action in this area. *See Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 699, 104 S.Ct. 2694, 2700, 81 L.Ed.2d 580 (1984) (*quoting Fidelity Federal Savings & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)) ("federal regulations have no less pre-emptive effect than federal statutes.").

not grain warehousing. Because the United States Warehouse Act does not apply to either grain dealing or to grain insurance, no preemption issue is involved in this case." This argument is quickly dismissed by reference to the Supreme Court's decision in *Aloha Airlines, Inc. v. Director of Taxation of Hawaii*, 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983). In *Aloha Airlines*, the Court addressed a situation where federal law prohibited any state from imposing a gross receipts tax on airlines. Nonetheless, the Hawaii legislature passed a property tax on airlines which tax was to be measured by gross receipts. In striking down the state statute, the Court stated:

> [W]e are unpersuaded by appellee's contention that, because the Hawaii legislature styled § 239-6 as a property tax measured by gross receipts rather than a straightforward gross receipts tax, the provision should escape preemption under § 1513(b)'s exemption for property taxes. The manner in which the state legislature has described and categorized § 239-6 cannot mask the fact that the purpose and effect of the provision are to impose a levy upon the gross receipts of the airlines.

*Id.* at 13–14, 104 S.Ct. at 294–95 (footnote omitted).

Similarly, in the instant case, the fact that Public Act No. 84–156 amended the "Grain Dealers Act" and the "Illinois Grain Insurance Act" cannot mask the fact that the purpose and effect of the amendments is to regulate federally licensed warehousemen—thereby putting the amendments in conflict with federal regulation. In such a situation, the state law must yield.

## III. PROCEDURE

Defendant has raised a number of objections in opposition to the motion for summary judgment which are not addressed to the merits of the motion.

■ First, Defendant argues that disposition on summary grounds is inappropriate at this time as discovery is incomplete. Citing *Sames v. Gable*, 732 F.2d 49 (3d Cir.1984), Defendant flatly states: "Grant-

ing a Motion for Summary Judgment is error when opposing parties' Interrogatories remain unanswered." This is simply *not* the law and is a gross misreading of the *Sames* decision. What the *Sames* court stated is: "This court has criticized the practice of granting summary judgment motions at a time when *pertinent* discovery requests remained unanswered by the moving party...." *Id.* at 51 (emphasis added). Obviously, the operative word in the court's statement is "pertinent." This Court does not take lightly its action in granting summary judgment here while interrogatories are still unanswered. However, after careful review of the interrogatories posed, it is clear to this Court that no matter what the responses are to the interrogatories those responses will not, and cannot, change the result of the summary judgment motion. Thus, as "no genuine issue as to any material fact" exists, and Plaintiff is "entitled to a judgment as a matter of law," summary judgment is properly entered at this time. *See* Fed.R.Civ.P. 56(c).

■ Second, Defendant argues that summary judgment should not be entered as Plaintiff has failed to show the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This argument has no merit. The issue before the Court is extremely clearcut—either Public Act No. 84–156 conflicts with federal law or it does not. This is clearly a question of law and not of fact.

[4] Finally, Defendant argues that this action should not proceed without the joinder of certain other parties pursuant to Fed.R.Civ.P. 19. Rule 19 requires that:

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction ... shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties

subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Specifically, Defendant seeks joinder of: (1) farmers that normally sell grain to Plaintiffs in reliance on Plaintiffs' state grain dealers' licenses; (2) the rest of the Illinois grain dealer industry; and (3) the Illinois Grain Insurance Corporation, the corporation responsible for, *inter alia,* making investment decisions regarding funds held in the Illinois Grain Insurance Fund. Defendant's argument with respect to the first two mentioned parties hinges on those parties' "economic" interest in the litigation. However, Rule 19's statement requiring joinder of parties who claim "an interest relating to the subject of the action" does not include economic interests— it must be a legally protected interest. 3A J. Moore, Moore's Federal Practice § 19.07 [2.–0], at 19–99 (1986). Since, in these parties' absence complete relief can be granted, neither of the first two listed parties are necessary parties under Rule 19.

■ As to the proposed joinder of the Illinois Grain Insurance Corporation, it appears that its only interest is an economic one similar to those above. Further, the grain insurance fund is, in effect if not in name, a party to this litigation because its president is the named Defendant herein— the Director of the Department of Agriculture, Larry Werries. Also, this action is being defended by the Attorney General of Illinois who serves as the corporation's secretary. *See* Ill.Rev.Stat. ch. 114, ¶ 703(a) (1985) ("the governing powers of the Corporation shall be vested in the Board of Directors composed of the Director of the Department of Agriculture, who shall serve as president; the Attorney General, who shall serve as secretary...."). Clearly, the interests of the corporation are adequately represented by the named Defendant and his counsel. Thus, all necessary parties are before the Court. No joinder is needed under Rule 19.

## IV. CONCLUSION

*Ergo,* Plaintiffs' motion for summary judgment is ALLOWED. It is hereby ordered that Defendant herein and any other person acting under color or authority of the law of the State of Illinois is permanently enjoined from attempting to enforce any provision of Illinois Public Act No. 84–156 to the extent that said public act requires federally licensed warehousemen to join the Illinois Grain Insurance Fund or provide equal protection based upon the regulations adopted by the Illinois Department of Agriculture. Thus, Defendant and any other person acting under color or authority of the law of the State of Illinois is enjoined from commencing any action against Plaintiffs (including any action to revoke Plaintiffs' grain dealer licenses or to enjoin them from warehousing in the State of Illinois) for failure to comply with the aforementioned act.

In accordance with the Court's disposition, the Clerk of this District Court is ordered to disburse all funds collected in the escrow account established in accordance with this Court's order entered April 7, 1986. The Clerk shall disburse said funds to the depositors in amounts equal to their respective contributions plus the interest accumulated on those contributions. To facilitate the distribution of the escrow funds, Plaintiffs are ordered to submit to the Clerk an itemized list of each individual contribution by each Plaintiff.