# ALOHA AIRLINES, INC. *v.* DIRECTOR OF TAXATION OF HAWAII

No. 82–585.   Argued October 4, 1983—Decided November 1, 1983*

---

*Together with No. 82–586, *Hawaiian Airlines, Inc.* v. *Director of Taxation of Hawaii,* also on appeal from the same court.

*Richard L. Griffith* argued the cause for appellants in both cases. With him on the briefs were *Michael A. Shea, Richard R. Clifton, Hugh Shearer,* and *H. Mitchell D'Olier.*

*William D. Dexter* argued the cause for appellee. With him on the brief was *Kevin T. Wakayama.*†

JUSTICE MARSHALL delivered the opinion of the Court.

These appeals present the question whether 49 U. S. C. § 1513(a) pre-empts a Hawaii statute that imposes a tax on the gross income of airlines operating within the State. We conclude that the Hawaii tax is pre-empted.

I

In 1970, Congress committed the Federal Government to assisting States and localities in expanding and improving the Nation's air transportation system. See Airport and Airway Development Act of 1970, Pub. L. 91–258, 84 Stat. 219. In the same session, Congress established the Airport and Airway Trust Fund to funnel federal resources to local airport expansion and improvement projects. See Airport and Air-

---

†Briefs of *amici curiae* urging affirmance were filed for the State of Alaska et al. by *Kenneth O. Eikenberry,* Attorney General of Washington, and *Jeffrey D. Goltz,* Assistant Attorney General, *Norman C. Gorsuch,* Attorney General of Alaska, and *Diane T. Colvin,* Assistant Attorney General, *Robert K. Corbin,* Attorney General of Arizona, *Michael C. Turpen,* Attorney General of Oklahoma, *Chauncey H. Browning,* Attorney General of West Virginia, and *Jack C. McClung,* Deputy Attorney General; and for the Multistate Tax Commission et al. by *Eugene F. Corrigan.*

Briefs of *amici curiae* were filed for the State of New York by *Robert Abrams,* Attorney General, *Peter H. Schiff,* and *Francis V. Dow,* Assistant Attorney General; and for the Air Transport Association of America by *Andrew C. Hartzell, Jr.*

way Revenue Act of 1970, Pub. L. 91–258, § 208, 84 Stat. 250. As originally devised, the Trust Fund received its revenues from several federal aviation taxes, including an 8% tax on domestic airline tickets, a $3 head tax on international flights out of the United States, and a 5% tax on air freight. See §§ 203, 204, 84 Stat. 238, 240 (codified, as amended, at 26 U. S. C. §§ 4261, 4271 (1976 ed. and Supp. V)). See generally *Massachusetts* v. *United States*, 435 U. S. 444 (1978).

Once the Airport and Airway Development Act was passed and the Trust Fund established, the question arose whether States and municipalities were still free to impose additional taxes on airlines and air travelers. In *Evansville-Vanderburgh Airport Authority Dist.* v. *Delta Airlines, Inc.*, 405 U. S. 707 (1972), this Court ruled that neither the Commerce Clause nor the Airport and Airway Development Act precluded state or local authorities from assessing head taxes on passengers boarding flights at state or local airports. In particular the Court noted: "No federal statute or specific congressional action or declaration evidences a congressional purpose to deny or pre-empt state and local power to levy charges designed to help defray the costs of airport construction and maintenance." *Id.*, at 721.

Following the *Evansville-Vanderburgh Airport* decision, Committees in both Houses of Congress held hearings on local taxation of air transportation.[1] Both Committees concluded that the proliferation of local taxes burdened interstate air transportation, and, when coupled with the federal Trust Fund levies, imposed double taxation on air travelers.[2] To deal with these problems, Congress passed § 7(a) of the

---

[1] See Hearings on S. 2397 et al. before the Subcommittee on Aviation of the Senate Committee on Commerce, 92d Cong., 2d Sess., 129–198 (1972); Hearings on H. R. 2337 et al. before the Subcommittee on Transportation and Aeronautics of the House Committee on Interstate and Foreign Commerce, 92d Cong., 2d Sess. (1972).

[2] See S. Rep. No. 93–12, pp. 17, 20–21 (1973); H. R. Rep. No. 93–157, pp. 4–5 (1973).

Airport Development Acceleration Act of 1973 (ADAA), the provision at issue in these appeals. See Pub. L. 93–44, § 7(a), 87 Stat. 90. That section, which is currently codified at 49 U. S. C. § 1513,[3] reads:

> "(a) No State . . . shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom. . . .
>
> "(b) Nothing in this section shall prohibit a State . . . from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services. . . ."

For States with taxes that were in effect prior to May 21, 1970, and would be pre-empted by § 1513(a), Congress postponed the effective date of the section until December 31, 1973. *Ibid.*

## II

Appellants Aloha Airlines, Inc., and Hawaiian Airlines, Inc., are both commercial airlines that carry passengers, freight, and mail among the islands of Hawaii. Throughout the periods relevant to these appeals, appellants have been Hawaii public service companies, see Haw. Rev. Stat. §§ 239–2, 269–1 (1976 and Supp. 1982), and subject to the State's public service company tax, which provides:

> "There shall be levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business . . . . The tax imposed by this section is a means of taxing the personal property of the airline or other carrier, tangible and intangible, including

---

[3] In 1982, Congress amended 49 U. S. C. § 1513 to prohibit discriminatory property taxes imposed on air carriers. See Airport and Airway Improvement Act of 1982, Pub. L. 97–248, § 532, 96 Stat. 701 (codified at 49 U. S. C. § 1513(d) (1982 ed.)). Being enacted after the relevant periods, this amendment has no bearing on these appeals.

going concern value, and is in lieu of the [general excise] tax imposed by chapter 237 but is not in lieu of any other tax." § 239–6 (1976).

In 1978, appellant Aloha Airlines sought refunds for taxes assessed under this provision for the carriage of passengers between 1974 and 1977 on the ground that 49 U. S. C. § 1513(a) had pre-empted Haw. Rev. Stat. § 239–6 as of December 31, 1973. In 1979, appellant Hawaiian Airlines filed a similar action seeking a refund for taxes paid between 1974 and 1978. In separate decisions, the Tax Appeal Court of the State of Hawaii rejected appellants' pre-emption arguments, *In re Aloha Airlines, Inc.*, No. 1772 (June 9, 1978); *In re Hawaiian Airlines, Inc.*, Nos. 1853, 1868 (Jan. 4, 1980). On consolidated appeal, the Hawaii Supreme Court affirmed, one justice dissenting, *In re Aloha Airlines, Inc.*, 65 Haw. 1, 647 P. 2d 263 (1982). Appellants then filed timely notices of appeal, this Court noted probable jurisdiction, 459 U. S. 1101 (1983), and we now reverse.

## III

The plain language of 49 U. S. C. § 1513(a) would appear to invalidate Haw. Rev. Stat. § 239–6. Section 1513(a) expressly pre-empts gross receipts taxes on the sale of air transportation or the carriage of persons traveling in air commerce, and Haw. Rev. Stat. § 239–6 is a state tax on the gross receipts[4] of airlines selling air transportation and carrying persons traveling in air commerce. The Hawaii Supreme Court sought to avoid this direct conflict by looking beyond the language of § 1513(a) to Congress' purpose in enacting the statute. The court concluded that Congress passed the ADAA to deal with the proliferation of local and state head taxes on airline passengers in the early 1970's. Since Haw. Rev. Stat. § 239–6 is imposed upon air carriers

---

[4] Appellee concedes that the phrase "gross income," under Haw. Rev. Stat. § 239–6, is synonymous with the phrase "gross receipts" used in 49 U. S. C. § 1513(a). See Brief for Appellee 7, n. 2.

as opposed to air travelers, the Hawaii court reasoned that the provision did not come within the ambit of § 1513(a)'s prohibitions.

We cannot agree with the Hawaii Supreme Court's analysis. First, when a federal statute unambiguously forbids the States to impose a particular kind of tax on an industry affecting interstate commerce, courts need not look beyond the plain language of the federal statute to determine whether a state statute that imposes such a tax is pre-empted.[5] Thus, the Hawaii Supreme Court erred in failing to give effect to the plain meaning of § 1513(a).[6]

Second, even if the absence of an express proscription made it necessary to go beyond the plain language of § 1513(a),

---

[5] The Hawaii Supreme Court apparently considered itself obliged by *Rice* v. *Santa Fe Elevator Corp.*, 331 U. S. 218 (1947), and its progeny to examine thoroughly Congress' intentions before declaring Haw. Rev. Stat. § 239–6 pre-empted. *In re Aloha Airlines, Inc.*, 65 Haw. 1, 13–16, 647 P. 2d 263, 272–273 (1982). *Rice* and its progeny, however, involved the implicit pre-emption of state statutes. Rules developed in these cases apply when a court must decide whether a state law should be pre-empted even though Congress has not expressly legislated pre-emption. These rules, therefore, have little application when a court confronts a federal statute like § 1513(a) that explicitly pre-empts state laws.

[6] The Hawaii Supreme Court professed confusion over the "paradox" between § 1513(a)'s prohibition on certain state taxes on air transportation and § 1513(b)'s reservation of the States' primary sources of revenue, such as property taxes, net income taxes, franchise taxes, and sales or use taxes. *In re Aloha Airlines, Inc., supra*, at 16, 647 P. 2d, at 273. We find no paradox between § 1513(a) and § 1513(b). Section 1513(a) pre-empts a limited number of state taxes, including gross receipts taxes imposed on the sale of air transportation or the carriage of persons traveling in air commerce. Section 1513(b) clarifies Congress' view that the States are still free to impose on airlines and air carriers "taxes other than those enumerated in subsection (a)," such as property taxes, net income taxes, and franchise taxes. While neither the statute nor its legislative history explains exactly why Congress chose to distinguish between gross receipts taxes imposed on airlines and the taxes reserved in § 1513(b), the statute is quite clear that Congress chose to make the distinction, and the courts are obliged to honor this congressional choice.

nothing in the legislative history of the ADAA suggests that Congress intended to limit § 1513(a)'s pre-emptive effect to taxes on airline passengers or to save gross receipts taxes like § 239–6.[7] Although Congress passed § 1513(a) to deal primarily with local head taxes on airline passengers, the legislative history abounds with references to the fact that § 1513(a) also pre-empts state taxes on the gross receipts of airlines.[8] For example, Senator Cannon, one of the ADAA's sponsors, clearly stated in floor debate: "The bill prohibits the levying of State or local head taxes, fees, gross receipts taxes or other such charges either on passengers or on the carriage of such passengers in interstate commerce." 119 Cong. Rec. 3349 (1973).

Finally, we are unpersuaded by appellee's contention that, because the Hawaii Legislature styled § 239–6 as a property tax measured by gross receipts rather than a straightforward gross receipts tax, the provision should escape preemption under § 1513(b)'s exemption for property taxes. The manner in which the state legislature has described and categorized § 239–6[9] cannot mask the fact that the pur-

[7] Indeed, Congress was presented an opportunity to exempt gross receipts taxes from § 1513(a), and declined to grant the exemption. During House hearings on the ADAA, a representative of the Ohio Tax Commission asked the Subcommittee responsible for the bill to expand § 1513(b) to permit state "gross receipts taxes fairly apportioned to a State," so that Ohio could maintain a gross receipts tax similar to Hawaii's § 239–6. See Hearings on H. R. 4082 before the Subcommittee on Transportation and Aeronautics of the House Committee on Interstate and Foreign Commerce, 93d Cong., 1st Sess., 246–253 (1973). When Congress enacted the ADAA without Ohio's proposed amendment, the State Attorney General issued an opinion concluding that Ohio's gross receipts tax was pre-empted. See Ohio Op. Atty. Gen. No. 73–117 (Nov. 20, 1973).

[8] See, e. g., S. Rep. No. 93–12, p. 6 (1973); H. R. Conf. Rep. No. 93–225, p. 5 (1973); 119 Cong. Rec. 18045 (1973) (statement of Sen. Cannon); id., at 17345 (statement of Rep. Devine).

[9] The most likely explanation for the seemingly curious way in which the legislature characterized § 239–6 is that, at one time, this Court distinguished between the manner in which a state statute was measured and

pose and effect of the provision are to impose a levy upon the gross receipts of airlines. Section 1513(a) expressly prohibits States from taxing "directly or indirectly" gross receipts derived from air transportation. Beyond question, a property tax that is measured by gross receipts constitutes at least an "indirect" tax on the gross receipts of airlines. A state statute that imposes such a tax is therefore pre-empted.[10]

## IV

In conclusion, we join with state courts of Alaska and New York[11] in the view that § 1513(a) proscribes the imposition of

the subject matter of the tax when assessing the validity of the tax under the Commerce Clause. Compare *Railway Express Agency, Inc.* v. *Virginia*, 358 U. S. 434 (1959) (upholding a property tax measured by gross receipts), with *Railway Express Agency, Inc.* v. *Virginia*, 347 U. S. 359 (1954) (striking down a functionally equivalent business privilege tax). But cf. *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274 (1977). The constitutionality of § 239–6 is of course not at issue in these appeals.

[10] The unambiguous proscription contained in § 1513(a) compels us to conclude that it pre-empts Haw. Rev. Stat. § 239–6 as well as other state taxes imposed on or measured by the gross receipts of airlines. *Amici* point out that several States have taxation statutes similar to § 239–6 and that the ability of those States to retain revenues collected from airlines during the past decade will be affected by our decision today. We acknowledge that our interpretation of § 1513(a) may result in the disruption of state systems of taxation; we are, however, bound by the plain language of the statute. Congress clearly has the authority to regulate state taxation of air transportation in interstate commerce, see *Arizona Public Service Co.* v. *Snead*, 441 U. S. 141, 150 (1979), and we trust that Congress will amend § 1513(a) if it concludes, upon reconsideration, that the pre-emptive sweep of the current version is too great.

[11] *Wein Air Alaska, Inc.* v. *State*, No. 3AN 81–8582 Civil (Alaska Super. Ct., May 6, 1983), appeal docketed (Alaska Sup. Ct.); *Air Transport Assn. of America* v. *New York State Dept. of Taxation and Finance*, 91 App. Div. 2d 169, 458 N. Y. S. 2d 709, aff'd, 59 N. Y. 2d 917, 453 N. E. 2d 548 (1983), cert. pending, No. 83–162; cf. *State ex rel. Arizona Dept. of Revenue* v. *Cochise Airlines*, 128 Ariz. 432, 626 P. 2d 596 (App. 1980) (§ 1513(a) pre-empts state gross receipts taxes on the carriage of passengers, but not freight, in air commerce); see also *Allegheny Airlines, Inc.* v. *City of Philadelphia*, 453 Pa. 181, 309 A. 2d 157 (1973) (finding a Philadelphia head tax on air passengers pre-empted).

state and local taxes on gross receipts derived from air transportation or the carriage of persons in air commerce. The judgment of the Supreme Court of the State of Hawaii is reversed, and the cases are remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*