**TRAVEL SERVICES, INC., Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS and ANTHONY P. OLIVE, Director of the Virgin Islands Bureau of Internal Revenue, Defendants**

Civil No. 204/87

Territorial Court of the Virgin Islands

Div. of St. Croix

June 23, 1988

ELLEN G. DONOVAN, ESQ., St. Croix, V.I., *for plaintiff*

RICHARD L. MARLAR, ESQ., Assistant Attorney General—Tax (Department of Justice), St. Thomas, V.I., *for Government*

PETERSEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions for summary judgment filed by both parties on June 1, 1988. These motions present this Court with a novel issue: Whether 49 USC § 1513(a) pre-empts the Virgin Islands Gross Receipts Tax Statute, to the extent that it imposes a tax on the gross receipts of travel agencies. For the reasons mentioned below, this Court concludes that the territorial statute is not pre-empted.

## FACTS

Plaintiff, Travel Services, Inc., is a corporation doing business in the Virgin Islands under the trade name of Southerland Tours (hereinafter referred to as Southerland). Southerland is a full service travel agency whose activity includes arranging and selling air transportation, hotel accommodations, land tours, cruises, land transportation and car rentals. Pursuant to agreements with International Airlines Travel Agent Network (IATAN) and Agent Reporting Plan (ARP), Southerland sells tickets for approximately sixty airlines. The ticket stock, travel documents and airline plates given to travelers are the property of the airlines. Southerland does not own or operate aircrafts. IATAN and the various airlines impose certain standards, terms and conditions to which Southerland must adhere when arranging and selling air transportation. Southerland, for example, cannot alter the price of an airline ticket. It also cannot give refunds without written instructions from the airlines. Employees of Southerland are trained by the airlines in the same fashion as airline employees. This insures that air transportation is sold to the public at the same fares and under the same terms, conditions and restrictions whether purchased directly from an airline or through a travel agency.

Under Southerland's agreement with ARP, all proceeds from the sale of air transportation are deposited in Southerland's account. These proceeds belong to the airlines and are not the property of

Southerland. ARP draws all amounts from this account, except an amount which represents commissions earned by Southerland.

Title 33 of the Virgin Islands Code imposes a tax of four percent on the gross receipts of all corporations doing business in the Virgin Islands. 33 V.I.C. § 41 and § 43. In 1973, Congress enacted 49 USC § 1513(a) which prohibited the Virgin Islands from collecting a gross receipts tax on the sale of air transportation, or on the gross receipts derived from such sale. Consequently, defendant, Director of Internal Revenue Bureau, took the position that the Bureau will not collect gross receipts taxes from airlines, but will continue to collect such taxes from travel agencies. Thus, if an agency sells a ticket for $100 and earns a commission of $10 the Director will tax the $10.

Pursuant to 33 V.I.C. § 43, plaintiff filed monthly gross receipts tax returns for the period of June 1983 through April 1986. Upon conducting an examination of these returns, the Director determined that Southerland had omitted a total of $1,655,026.16 from its monthly gross receipts. This amount, derived from a profit and loss statement, represented commissions earned for selling air transportation. The Director assessed a deficiency in Southerland's gross receipts tax for the periods mentioned of $44,377.02 and $10,399.43 as interest. Southerland objected to the tax and filed the instant action alleging that the Virgin Islands tax was pre-empted by 49 USC § 1513(a). Both parties filed motions for summary judgment and thoroughly briefed the relevant issues.

## DISCUSSION

These motions for summary judgment require the Court to decide whether 49 USC § 1513(a) pre-empts the Virgin Islands Gross Receipts Tax Statute to the extent that it imposes a tax on the gross receipts of travel agencies.

■ This Court must commence its analysis with the language employed by Congress as the legislative purpose is generally reflected in the ordinary meaning of the words used. American Tobacco Co. v. Patterson, 102 S.Ct. 1534, 1537 (1982). The relevant statute, 49 USC § 1513(a), reads as follows:

No state (. . . including the Virgin Islands) shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; . . .

This statute is alleged to pre-empt 33 V.I.C. § 43(a) which reads as follows:

> (a) Every individual and every firm, corporation, and other association doing business in the Virgin Islands shall report their gross receipts and pay a tax of four percent (4%) on the gross receipts of such business . . . .

It is evident that 49 USC § 1513(a) prohibits the Virgin Islands from taxing, directly or indirectly, the sale of air transportation or the gross receipts derived from such sale. The narrow, yet critical, issue, however, is whether the commissions received by a travel agency can properly be classified as gross receipts derived from the sale of air transportation.

■ This Court will proceed, bearing in mind the well settled rule that statutory exemptions are a matter of legislative grace and as such, are narrowly and strictly construed. Bingler v. Johnson, 89 S.Ct. 1439, 1445 (1969); King Christian Enterprises, Inc. v. Government, 5 V.I. 170, 178 (3rd Cir. 1965). The aim of any taxing scheme is to tax activities or events. In this case the activity sought to be taxed is veiled. On its face, Southerland's activities appear to be protected by § 1513(a). However, careful scrutiny of its business operations reveals that it performs two activities with one act. It undeniably sells air transportation, and by so doing, it performs a service to airlines for a fee. Both activities, though related, are separate and distinct for tax purposes. The Virgin Islands seek to tax only one—the sale of a service.

Southerland argues that its commissions represent a portion of collected airfares and, therefore, the commissions are part of "gross receipts derived from the sale of air transportation." If this were true, a surtax on the gross salary of airline ticket agents would be prohibited, so long as the agents were paid from the airlines' sales account. Unfortunately, escape from taxation is not that simple. It is interesting to note that the collected airfares, which represent "gross receipts derived from the sale of air transportation," are not the property of Southerland. Surely, Southerland would not report as income, gross receipts which are not theirs. But the unreported gross receipts discovered by the Director came from Southerland's books and records. Thus, shouldn't these receipts represent something else?

It is true that all receipts from the sale of air transportation by Southerland are deposited in a central APR account and that Southerland's commission is paid therefrom. What Southerland fails to recognize, however, is that the character or classification of income for tax purposes, changes depending on its purpose and the parties involved. Southerland admits that the gross receipts which it collects from passengers are the property of the airlines. In this respect, Southerland is merely a conduit for payment of airline tickets. The purpose of the payment is for travel. Accordingly, these receipts represent a transaction between the airlines and its passengers. Such receipts represent the sale of air transportation—the activity sought to be pre-empted by § 1513(a).

The fact that Southerland is paid from the same account in which the gross receipts from the sale of air transportation are deposited is irrelevant. Those receipts are not the property of Southerland. The instant that a portion of those receipts is assigned, or paid to Southerland, the character of that portion is altered. It no longer represents "gross receipts derived from the sale of air transportation." It is now commissions for services rendered. This is so because its purpose is not for travel, but to compensate Southerland for services rendered. The airlines, by paying commissions, surely are not purchasing air transportation. Obviously, this is not a transaction between an airline and a passenger, but rather it is a transaction between an airline and its travel agent. This Court cannot consider this transaction as the activity sought to be pre-empted by § 1513(a). The statute "pre-empts state taxes imposed on or measured by the gross receipts of airlines," not state taxes imposed on travel agencies whose income doesn't represent such receipts. Aloha Airlines v. Director of Taxation of Hawaii, 104 S.Ct. 291, 295 n.10 (1983).

The cases cited by Southerland in support of its position are inapposite. They involve attempts to tax an airline on its sale of air transportation. Here the Virgin Islands is taxing the sale of a service provided by travel agencies.

This Court's distinction between the sale of air transportation and the sale of services is not unique. The United States District Court in Salem Transportation Co. v. Port Authority of N.Y. & N.J., 611 F. Supp. 254, 257 (D.C.N.Y. 1985) distinguished between the activity of carrying passengers in air transportation and that of selling ground transportation services. It said, "Congress passed § 1513(a) to deal primarily with local head taxes on airline

passengers. (Citations omitted.) The section was not passed to prohibit the imposition of fees on ground transportation service." Id. at 257. Though these activities are very much related, the Court recognized their distinction for tax purposes. Similarly, in Wardair Canada, Inc. v. Florida Dept. of Revenue, 106 S.Ct. 2369, 2372 (1986), the Supreme Court upheld a tax on an airline for fuel consumed. The Court stated that Congress did not intend to preclude state sales taxation of airline fuel. Thus the Court recognized that an activity, though indispensable to the sale of air transportation or the carriage of persons therein, was nevertheless sufficiently distinct to be taxable.

Congress itself manifested an intent to distinguish between the sale of air transportation and the sale of other goods and services when it enacted § 1513(b). That statute reads as follows:

> Nothing in this section shall prohibit a State (. . . including the Virgin Islands) from the levy or collection of taxes other than those enumerated in subsection (a) of this section, including property taxes, net income taxes . . . sales taxes . . . on the sale of goods or services; . . . .

Clearly, "sale of goods or services" as used in § 1513(b) is not intended to include the sale of air transportation (i.e. a service). If it did, § 1513(b) would contradict § 1513(a). See State v. Cochise Airlines, 626 P.2d 596, 601 (Ariz. App. 1980). Thus, Congress itself has made it clear that it is only the sale of a particular service, that being air transportation, that is pre-empted. Related services remain taxable.

It is rather vivid to this Court that the plain language of § 1513(a), strictly construed, does not prohibit the imposition of gross receipts taxes on the commissions earned by travel agencies. This reading becomes even more apparent when one examines the Virgin Islands tax in light of the history and purpose of § 1513(a). In 1970, Congress passed the Airport and Airway Development Act in order to provide for needed improvements in the national air transportation system. A Trust Fund was established as a conduit to channel federal resources to local airport improvement and expansion projects. See 1973 U.S. Code Cong. & Admin. News, pgs. 1434–1437. The Fund was financed through federal aviation taxes, including a 8% charge on domestic passengers, and a $3 per person charge on international trips. Id. at 1450.

In 1972, the Supreme Court upheld passenger head taxes imposed by the states of New Hampshire and Indiana. Evansville-

Vanderburgh Airport Authority District v. Delta Airlines, Inc., 92 S.Ct. 1349 (1972). The decision invited state and local governments to impose similar taxes on air travelers. U.S. Code Cong. & Admin. News, supra, at 1446. Congress later concluded that "the proliferation of local taxes burdened interstate air transportation, and when coupled with the federal Trust Fund review, imposed double taxation on air travelers." Aloha, 104 S.Ct. at 293. To rectify this problem, Congress passed 49 USC § 1513(a).

Section 1513(a) was passed "to deal primarily with local head taxes on airline passengers." 104 *S.Ct.*, at 294. It also sought to "preempt state taxes on the gross receipts of *airlines*." (Emphasis supplied.) Id. at 294. Congress was concerned with the increase in airfares which would occur for example, if an airline was taxed on its sales. The airline would simply increase its fares. U.S. Code Cong. & Admin. News, supra, at 1451. Southerland is powerless to pass on gross receipts by increasing airfares. The tax, therefore, is not at odds with the purpose of § 1513(a). Conspicuously absent from the legislative history of § 1513(a) is any intent to pre-empt taxation of travel agencies. The history abounds with references to airlines and air passengers. The activity performed by travel agencies was never mentioned. As the Supreme Court in Wardair stated:

> Where a congressional statute does not expressly declare that a state law is to be pre-empted, and where there is no actual conflict between what federal and state law prescribe, we have required that there be evidence of a congressional intent to preempt the specific field covered by state law.

Wardair, supra, at 2372. No such conflict or congressional intent exists here.

■ For the foregoing reasons, this Court holds that 49 USC § 1513(a) does not pre-empt the Virgin Islands Gross Receipts Tax Statute with respect to commissions earned by travel agencies. The Government's Motion for Summary Judgment will be granted, and the Plaintiff's Motion for Summary Judgment will be denied.

## ORDER

THIS MATTER is before this Court on Motions for Summary Judgment filed by both parties on June 1, 1988, and their respective Motions in Opposition thereto, and the Court being sufficiently apprised, it is

ORDERED that the Plaintiff's Motion for Summary Judgment be and the same is hereby DENIED; and it is further

ORDERED that the Defendants' Motion for Summary Judgment be and the same is hereby GRANTED.