[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this case is whether rental payments, from a lease of an airplane owned by the plaintiff, Air Tiger, Inc. (Air Tiger) and leased to Air Tiger Operating, Inc. (ATO) for use in interstate commerce, are subject to the Connecticut sales tax, or whether the sales tax is preempted by the Airport Development Acceleration Act of 1973 (ADAA), currently codified at 49 U.S.C. § 40116.[1] Air Tiger appeals pursuant to General Statutes § 12-422 from a decision of the Commissioner of Revenue Services (commissioner) denying Air Tiger's protest of the commissioner's assessment of sales tax on lease payments made to Air Tiger for the rental of the airplane.
In 1992, Air Tiger purchased a 1969 model 1159 Gulfstream II aircraft for $2,400,000. This aircraft was a high performance aircraft, which flew at altitudes up to 45,000 feet with a cruising speed of 550 miles per hour and seated eleven passengers. Air Tiger took delivery of the Gulfstream in Wilmington, Delaware on the date of purchase. Air Tiger is a subchapter S corporation and its sole shareholder is Julian H. Robertson, Jr. Air Tiger's business address is in Naugatuck, Connecticut. Air Tiger is not a certificated air carrier as defined in General Statutes § 12-407 (22).[2]
Robertson formed a second subchapter S sister corporation, ATO, located in Naugatuck, Connecticut, and was its hole shareholder. ATO was incorporated under the laws of the State of Delaware and was authorized to do business in Connecticut. On May 5, 1992, Air Tiger entered into an aircraft lease agreement leasing the Gulfstream aircraft to ATO. The CT Page 3727 purpose of this structure was to have a layer of protection against liability between Air Tiger, as the owner-lessor of the aircraft, and ATO, as lessee. ATO then leased the Gulfstream to Robertson for business purposes at the rate of $1000 per flight hour, and also to third party charters at the same rate. Robertson and charter users always chartered the whole plane, never individual seats. ATO operates the Gulfstream under a certificate issued by the Federal Aviation Administration pursuant to Title 14, Chapter I, Subchapter G, Part 135 of the Code of Federal Regulations. (See Joint Stipulation of Facts, para. 9.)
Under the lease agreement, Air Tiger agreed to lease the Gulfstream to ATO as lessee for $1000 per flight hour, with "flight hour"defined as all off ground time as measured by the Gulfstream's on-board clock (excluding time relating to maintenance and pilot flight checks). There was no minimum amount of rental payments between Air Tiger and ATO. ATO was obligated, at its own expense, to maintain the Gulfstream in a fully operative condition so that it was completely airworthy. When not in use, the Gulfstream was hangared at the Waterbury-Oxford Airport in Oxford, Connecticut. MI flights by ATO were in interstate commerce. There were no flights solely within Connecticut.
Although ATO was obligated to Air Tiger to maintain the Gulfstream in complete airworthy condition, ATO passed this responsibility on to Key Air, Incorporated (Key Air), an unrelated corporation. ATO entered into an aircraft operating agreement with Key Air, a Connecticut corporation with offices at the Waterbury/Oxford airport in Oxford, Connecticut for the operation and chartering of the Gulfstream (Charter Business). The purpose of this agreement was to have Key Air provide for the full maintenance of the aircraft, provide qualified flight crews, mechanics and other personnel required to keep the aircraft in top condition, be responsible for flight conduct and scheduling of the use of Gulfstream. Key Air also agreed to keep logs and all other documents necessary for the operation of a commercial aircraft, and to provide storage for the Gulfstream, pay for fees and expenses, fixed costs and direct operating costs, nonrecurring costs, provide fuel for the aircraft and also to provide pilot training and insurance. This agreement recited that ATO would utilize the Gulfstream for approximately 250 hours of flight per year, and that subject to the availability of the aircraft, Key Air agreed to use its best efforts to arrange for and secure third party charter flights by its customers. As part of this agreement, Key Air obligated itself to turn over to ATO all revenue received from its third party charter operation less direct operating costs.
During the tax period at issue, between December 1, 1994 through December 31, 1997, Air Tiger filed monthly sales and use tax returns reporting the gross receipts it received from ATO for the lease of the CT Page 3728 Gulfstream during this period. The gross receipts equaled the total amount of flight hours the Gulfstream was used by both Robertson and the Charter Business multiplied by $1000 per flight hour. During this tax period, both Robertson and Charter Business used the Gulfstream for a total of 1548.2 hours. of those total flight hours, 591.9 flight hours were attributed to the usage by Robertson and 956.3 flight hours were attributable to Charter Business.
Effective October 1, 1997, General Statutes § 12-412 (99) provided for an exemption from the sales tax on the "[s]ales of and the storage, use or other consumption of, aircraft having a maximum certificated takeoff weight of six thousand pounds or more." The Gulfstream had a certificated takeoff weight in excess of six thousand pounds, and therefore qualified for the sales tax exemption after October 1, 1997. The commissioner concedes that lease charges to ATO after October 1, 1997, are exempt from the sales tax. (See Joint Stipulation of Facts, para. 14.) With the three months of the audit period (October 1, 1997 through December 31, 1997) exempt from the sales tax, Air Tiger deducted 1023.2 hours which it attributed to charges made after October 1, 1997 leaving a balance of 525 hours of flight time during the period from December 1, 1994 to October 1, 1997. Air Tiger computed the sales tax of 6% on the gross receipts related to the Charter Business and the use of the aircraft by Robertson on $525,000 ($1000 x 525), and remitted the sales tax of $31,500 ($525,000 x .06%) to the commissioner.
Air Tiger claims in this appeal that no sales tax should be due on the lease from Air Tiger to ATO for the tax period December 1, 1994 through October 1, 1997, and therefore all payments made to the commissioner for sales taxes paid during this period should be refunded. Air Tiger claims that such lease payments are exempt from the sales tax under federal legislation, in particular 49 U.S.C. § 40116 (b).
49 U.S.C. § 40116 (b) states in pertinent part: "a state . . . may not levy or collect a tax, fee, head charge, or other charge on —
(1) an individual traveling in air commerce;
(2) the transportation of an individual traveling in air commerce;
(3) the sale of air transportation; or
(4) the gross receipts from that air commerce or transportation."
Air Tiger argues that its lease of the Gulfstream to ATO is based upon the number of hours flown by the plane and therefore the lease payments are derived from gross receipts from interstate air transportation and CT Page 3729 are exempt from the sales tax pursuant to 49 U.S.C. § 40116 (b). Air Tiger also claims that it purchased the Gulfstream out of state and brought it to Connecticut to be used only for flights originating outside the state of Connecticut, and therefore could not be subject to the sales tax because the Gulfstream has no presence in this state. Air Tiger further claims that its lease to ATO and the lease from ATO to Robertson and Key Air is a re-lease not taxable under our sales tax laws.
Air Tiger's basic premise is that the lease payments from ATO, as lessee, to Air Tiger, as lessor, are gross receipts obtained from the use of the Gulfstream in interstate commerce and, therefore, the state sales tax is a tax on air transportation prohibited by 49 U.S.C. § 40116 (b). Air Tiger relies on Aloha Airlines, Inc. v. Director of Taxation ofHawaii, 464 U.S. 7, 15, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983), which held that state and local governments cannot impose a tax on gross receipts derived from air transportation or the carriage of persons in air commerce. This raises the question of whether the lease payments from ATO to Air Tiger are gross receipts derived from air transportation or the carriage of persons in air commerce.
In the case at hand, the gross receipts are derived from the use of the Gulfstream with payments by Robertson to ATO, and from the rental of the Gulfstream to charters from either ATO or Key Air. The structure of the corporate arrangement between Air Tiger and ATO does two things. First, the arrangement attempts to shield Air Tiger and its asset of a $2.4 million airplane from any liability that may be incurred by ATO flying charters in the use of the Gulfstream; and second, it seeks to treat the gross receipts ATO obtains from Robertson and Charter Business as a pass through to Air Tiger so that the lease payments from ATO to Air Tiger retain their identification as gross receipts rather than payments on a lease which would be subject to the sales tax.
In Aloha Air Lines, Inc. v. Director of Taxation of Hawaii, supra,464 U.S. 7, Hawaii sought to impose a state tax on gross receipts of airlines selling air transportation and carrying persons traveling in air commerce. The ADAA prohibited a state from levying a local head tax on airline passengers or on the carriage of passengers in interstate commerce and therefore pre-empted Hawaii from levying such a tax, even though the Hawaiian Supreme Court considered the tax to be a property tax because it was levied on air carriers and not air travelers. Id., 13, 14. Air Tiger seizes upon the Supreme Court's analysis in Aloha AirLines, Inc. that where a tax is measured by the gross receipts of airlines, it constitutes "at least an `indirect' tax on the gross receipts of airlines . . . [and] is therefore pre-empted." Id., 14. Air Tiger reasons that where the rentals from the lease of the Gulfstream by Air Tiger to ATO are measured by the gross receipts of the air flights of CT Page 3730 the Gulfstream, the rentals are derived from gross receipts on passengers or airplanes used in interstate travel and therefore, are exempt from the Connecticut sales tax.
It appears to us that the lease between Air Tiger and ATO is once removed from the payment by Robertson and the Charter Business to ATO for the use of the Gulfstream. We note that 49 U.S.C. § 40116 (e)(1) allows states to impose "property taxes, net income taxes, franchise taxes, and sales or use taxes on the sale of goods or services" so long as these taxes do not cause an unreasonable burden or discriminate against interstate commerce. 49 U.S.C. § 40116 (d). Although lease payments by ATO may be part of its gross receipts paid to the lessor, they are not gross receipts from the sale of the use of aircraft in interstate commerce. As Air Tiger points out in its trial brief, "[d]uring the Tax Period at issue, the Gulfstream was used by Robertson and in the Charter Business for a total of 1548.2 flight hours." (Plaintiff's Trial Brief, p. 8.) Robertson and the Charter Business had no relationship with Air Tiger for the purpose of leasing the Gulfstream. The rental payments under the Air Tiger lease have nothing to do with the transportation of air passengers or the operation of an air cater in interstate commerce. We note that Air Tiger was not licensed under FAA regulations to operate the Gulfstream, and ATO, although licensed under FAA regulations, engaged Key Air to maintain, fly and schedule the operation of the plane. Under this arrangement, it becomes clear that the gross receipts earned in the operation of the Gulfstream flowed from Robertson and Key Air to ATO, not to Air Tiger.
Arizona v. Cochise Airlines, 128 Ariz. 432, 626 P.2d 596 (Ariz.App. 1980), relied upon by Air Tiger in support of its position, is not factually analogous to Air Tiger's situation in this case. In Arizona v.Cochise Airlines, the state of Arizona enacted a transaction privilege tax on the privilege of doing business in Arizona transporting persons and freight. The Arizona court, in construing the ADAA, concluded that the business tax was a tax upon carrying persons prohibited by the ADAA. Id., 601-02. The factual distinction between Cochise Airlines and Air Tiger is that Cochise Airlines was in the business of carrying passengers whereas Air Tiger was not.
Air Tiger also cites Air Transport Association of America v. Departmentof Taxation and Finance, 91 App.Div.2d 169, 458 N.Y.S.2d 709 (3d Dept. 1983), in support its position. Air Transport was an unincorporated trade and service association of thirty-one air carriers, twenty-one of whom did business in the state of New York. The New York tax was a franchise tax on airlines doing business in New York. In holding that since the franchise tax was a tax on gross receipts derived from air carriage, the court held that the New York taxing statute was preempted by the ADAA. CT Page 3731Air Transport Association of America v. Department of Taxation andFinance, supra, 458 N.Y.S.2d 711, aff'd, 59 N.Y.2d 917, 453 N.E.2d 548,466 N.Y.S.2d 319, cert. denied, 464 U.S. 960, 104 S.Ct. 392,78 L.Ed.2d 336
(1983). Again, we point out that Air Tiger was not in the same classification as the airlines in Air Transport.
General Statutes § 12-408 imposes a sales tax on retailers (as defined in § 12-407 (12)) for the privilege of making any sales defined in General Statutes § 12-407 at the rate of six percent of the gross receipts of the retailer derived from the sale. "Gross receipts" as used in this case means "the total amount of payment or periodic payments from leases or rentals of tangible personal property by a retailer." General Statutes § 12-407 (9)(A). Air Tiger comes within the statutory definition of a retailer subject to payment of taxes on gross receipts from the lease or rental or tangible personal property. Simply put, Air Tiger leases the Gulfstream to ATO, and therefore, unless exempt from paying a sales tax on the gross receipts from the lease, is obligated to pay such a sales tax. Since we conclude that the gross receipts of Air Tiger come from lease payments made by ATO to Air Tiger, and are not derived from air commerce or transportation, the lease payments are subject to the sales tax. We note that the sales tax was not designed to specifically tax air commerce or air transportation either directly or indirectly. Our sales tax statute, § 12-407 (2)(i)(L) defines "chartering services by a certificated air carrier on an aircraft" as a retail sale subject to the sales tax. However, the commissioner's Policy Statement 94 (8.1) Aircraft Chartering and Flight Instruction Services recites that "the term "chartering services' for the purpose of Conn. Gen. Stat. § 12-407 (2)(i)(L) includes only intrastate flights, which are flights wholly within Connecticut."
Air Tiger raises a claim of non-taxability under the sales tax statute because it claims that the Gulfstream aircraft was purchased out of state, and although hangared, maintained and serviced in Connecticut, all of the flights have been to places outside of Connecticut. Air Tiger seizes upon the commissioner's own regulation to support this contention. Section § 12-426-25 (h) of the Regulations of Connecticut State Agencies provides: "A lease is considered to be consummated in this state and subject to the [sales] tax where delivery of the tangible personal property is taken within the state or the property is leased with the intent to use it in Connecticut and the property is so used. The tax does not apply where delivery is taken outside the state and the property is used exclusively outside the State of Connecticut."
The simple answer to this claim of non-taxability is that the Gulfstream is housed in Oxford, Connecticut, serviced in Connecticut, and all flights, whether used by Robertson or charters, are scheduled from CT Page 3732 Connecticut. Key Air, a Connecticut corporation with its office located at the Waterbury-Oxford Airport in Oxford, Connecticut, is responsible for the fueling, maintenance, servicing, scheduling and providing flight crews for the Gulfstream in Connecticut. (See Joint Stipulation of Facts, para. 11.) Air Tiger's own lease agreement with ATO measures the rental payments on the lease based upon flight time defined as "all off-ground time as measured by the Gulfstream's on-board clock (excluding time relating to maintenance and pilot flight checks)." (Joint Stipulation of Facts, para. 8.) Since all flights of the Gulfstream originate and end at the Waterbury-Oxford Airport, and some part of the flight time, of necessity, is flown in Connecticut, we can only conclude that the lease between Air Tiger and ATO was consummated in the state of Connecticut and therefore subject to the sales tax.
The last argument made by Air Tiger is that it is not liable for sales tax because the lease of the Gulfstream to ATO is not a retail sale subject to tax but rather a lease for release, which is not taxable.[3]
In order for Air Tiger's argument to be valid, we would have to compare the lease from Air Tiger to ATO and a release to third parties. That is not what we have here. ATO does not lease the Gulfstream to Robertson or to the Charter Business. What ATO does is to sell time.
Under § 12-410, Air Tiger, the seller, must pay the tax on the gross receipts derived from the lease of the Gulfstream, unless Air Tiger can prove that it is not liable for the tax because the sale was for resale. Arkin-Medo, Inc. v. Commissioner of Revenue Services,43 Conn. App. 598, 603, 684 A.2d 1220 (1996), cert. denied, 240 Conn. 901,688 A.2d 330 (1997). "The statutorily approved method of proving that the property was purchased for resale is for the seller to take a certificate from the purchaser so stating." Id., 603-4. Air Tiger did not take any such certificate from ATO. The lease between Air Tiger and ATO is not the same as the hourly charter of the Gulfstream to Robertson or the Charter Business, and does not therefore qualify as a sale for resale. The purchaser, ATO, may issue a resale certificate to Air Tiger only where the services being sold are resold without change. See Andersen Consulting,LLP. v. Gavin, 255 Conn. 498, 504, n. 5, 767 A.2d 692 (2001); Regs., Conn. State Agencies § 12-426-27 (a). We conclude that the lease from Air Tiger to ATO does not qualify for an exemption from the sales tax as a resale.
We find that the rental payments from the lease of the Gulfstream by Air Tiger to ATO are subject to the Connecticut sales tax. Accordingly, judgment may enter in favor of the defendant commissioner dismissing this appeal without costs to either party.
Arnold W. Aronson CT Page 3733 Judge Trial Referee