# United States Court of Appeals
## For the First Circuit

No. 05-2004

JALBERT LEASING, INC.,
d/b/a C&J TRAILWAYS, ET AL.,

Plaintiffs, Appellants,

v.

MASSACHUSETTS PORT AUTHORITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Marianne B. Bowler, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

Jeremy Kahn with whom Kahn and Kahn, Wesley S. Chused and Looney & Grossman LLP were on brief for appellants.
Shelly L. Taylor with whom David S. Mackey, Massachusetts Port Authority, Roscoe Trimmier, Jr., Richard J. Lettieri Sarah L. Levine and Ropes & Gray were on brief for appellee.
Thomas F. Reilly, Attorney General, and Thomas A. Barnico, Assistant Attorney General, Government Bureau, on brief for Commonwealth of Massachusetts, Amicus Curiae.

April 12, 2006

**BOUDIN, <u>Chief Judge</u>**.  The Massachusetts Port Authority ("Massport"), an arm of the Commonwealth charged with (among other things) operating Boston's Logan Airport ("Logan"), imposes on bus and other surface transport entities a per-trip fee for stops at the airport.  Four bus companies brought suit against Massport in federal district court, seeking a declaration that the fees are prohibited under federal law and an injunction against them.  The district court found in favor of Massport, and the bus companies now appeal.

The facts are undisputed.  The plaintiff bus companies transport passengers between Logan and various locations, including out-of-state locations (<u>e.g.</u> Concord, N.H.).  To pick up or discharge passengers at Logan, each company had to sign a standard "Commercial Ground Transportation Service Operating Agreement" with Massport.  The agreement obligates the company to pay a fee based on the number of trips to Logan, regardless of the number of passengers and even if the bus is empty.

Massport states that the fee "is imposed in exchange for providing motor carriers with access to and use of Logan and serves to partially defray administrative, maintenance, construction and capital costs associated with the Logan facilities used by these carriers."  That it costs money to build and operate Logan is not in dispute.  Rather, the bus companies say that as to them, the

-2-

fees are prohibited by 49 U.S.C. § 14505 (2000) ("the bus statute"), which reads, in its entirety, as follows:

> A State or political subdivision thereof may not collect or levy a tax, fee, head charge, or other charge on--
>
> (1) a passenger traveling in interstate commerce by motor carrier;
>
> (2) the transportation of a passenger traveling in interstate commerce by motor carrier;
>
> (3) the sale of passenger transportation in interstate commerce by motor carrier; or
>
> (4) the gross receipts derived from such transportation.

Following Massport's announcement that it planned to triple the fee to $4.50 per trip in April 2004--it is now apparently several dollars higher--the bus companies brought the present action in the district court. The parties consented to proceed before a magistrate judge, 28 U.S.C. § 636(c) (2000), who, on cross-motions for summary judgment, rejected the statutory challenge and granted summary judgment for Massport. On this appeal, our review of the order granting summary judgment is de novo. Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 611 (1st Cir. 2000).

The statute, where it applies, forbids state-imposed fees; Massport is a state entity, and the per-trip charges are fees. What is at issue is whether the fees fall into any of the four enumerated categories. None of the four clearly embraces the

-3-

per-trip charge: the charge is not directly on "a passenger" (clause 1); formally, it is not on "the transportation of a passenger" or "the sale of passenger transportation" (clauses 2 and 3), as it applies to any bus trip to Logan, full or empty and passenger or freight; nor is it measured by or contingent upon "gross receipts" (clause 4).

But all of the clauses could be stretched to apply to the charge, and this is most apparent as to clauses 2 and 3, on which the plaintiffs principally rely. Although the charge is not formally levied on "the transportation of a passenger traveling in interstate commerce" or "the sale of [interstate] passenger transportation," the buses in question principally transport passengers and a number appear to be passengers traveling in interstate commerce. Thus, such transportation is impacted by the charge even though it is not the sole focus of the charge.

In short, the language of the statute is not so clear as to exclude other sources of guidance as to its meaning. See Strickland v. Comm'r, Me. Dep't of Human Servs., 48 F.3d 12, 19 (1st Cir. 1995). Ordinarily, the main sources of enlightenment are legislative history, judicial precedent, and the legislature's underlying policy. In this case, however, there is not very much enlightenment to be wrested from these sources.

The history of the statute begins not with buses, but with airlines and a 1972 Supreme Court decision upholding a locally

-4-

imposed "head" (i.e., per person) tax on airline passengers, vast numbers of whom travel interstate. Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707, 709 (1972). The Supreme Court sustained this tax against a dormant Commerce Clause challenge, saying that it did not discriminate against or unduly burden interstate commerce. Id. at 711-14, 717-18.

Congress responded with the Anti-Head Tax Act ("AHTA"), Pub. L. No. 93-44, 87 Stat. 88 (1973) (codified as amended at 49 U.S.C. app. § 1513 (1994)), prohibiting locally enacted head taxes and other fees on four categories of activity--the same four categories quoted above and later adopted in the bus statute. Unlike the bus statute, the airline statute as enacted prohibited such taxes "directly or indirectly," and, also unlike the bus statute, carved out some exceptions that permitted specific taxes, including landing fees for aircraft.[1] See 49 U.S.C. app. § 1513 (1994); Northwest Airlines, Inc. v. County of Kent, Mich., 510 U.S. 355, 365-66 (1994).

Two decades later, history repeated itself and it was the bus companies' turn to seek protection from the Supreme Court. In Oklahoma Tax Commission v. Jefferson Lines, Inc., 514 U.S. 175 (1995), the Supreme Court upheld Oklahoma's sales tax on purchases

---

[1]The original statute was eventually superceded by 49 U.S.C. § 40116(b), which retained essentially the same language as the original statute, save that the "directly or indirectly" language was deleted "as surplus." Historical and Statutory Notes, 49 U.S.C. § 40116(b) (2000).

of interstate bus tickets, ruling that the tax did not violate the dormant Commerce Clause.  Id. at 200.  Again, Congress responded, incorporating the four-prohibited-categories language of the AHTA into a new bus statute, whose text has been quoted above.

The House conference report summed up the object of the statute thusly:

> This section prohibits a State or political subdivision of a State from levying a tax on bus tickets for interstate travel.  This reverses a recent Supreme Court decision permitting States to do so and conforms taxation of bus tickets to that of airline tickets.

H.R. Conf. Rep. No. 104-422, at 220 (1995).  The House and Senate reports contain similar language or parts of it.  H.R. Rep. No. 104-311, at 120 (1995); S. Rep. No. 104-176, at 48 (1995).  No other legislative history (e.g., any hearings) has been cited to us, and, as we will explain, the hearings on the AHTA are not very helpful because of the different statutory tax and funding context in airline regulation.

The Conference Report just quoted is of limited help as a gloss on the statutory language; it repeats the language of one of the four categories and invokes in general terms the treatment of airline tickets.  Nor does it explain what was troubling to Congress: the Oklahoma statute did not directly distinguish between interstate and intrastate travel--it applied to all tickets, Jefferson Lines, 514 U.S. at 178--and there was no showing that

-6-

Oklahoma had placed an undue burden on interstate commerce in the sense of seriously discouraging interstate travel.

The Oklahoma statute was arguably vulnerable because it taxed the passenger (and required the bus company to collect the tax) on the full price of the ticket for an interstate trip originating in Oklahoma. In the context of gross receipt taxes on carriers, the Supreme Court had earlier insisted on some kind of apportionment. Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 662-63 (1948). However, Congress, in overturning Jefferson Lines, did not require apportionment, but banned--without further explanation--all taxes falling in any one of the four specified categories.[2] This, then, is the inconclusive background.

In the present appeal, the bus companies make several different arguments. The first--a leitmotif of the entire brief-- is that the fee charged on their pick-up trips to Logan is patently a "tax, fee, or other charge" levied "indirectly" on "passengers traveling in interstate commerce" and levied "directly" on "the transportation of passengers traveling in interstate commerce." But the fee is not charged "directly" on the interstate

_____

[2]Both the circuit court, In re Jefferson Lines, Inc., 15 F.3d 90, 92-93 (8th Cir. 1994), and two justices dissenting in the Supreme Court, Jefferson Lines, 514 U.S. at 201 (Breyer, J., joined by O'Connor, J.), deemed Central Greyhound controlling. Two other justices joined the majority's result based on a view of dormant Commerce Clause doctrine quite different from either the majority or dissenting opinions. Id. at 200-01 (Scalia, J., joined by Thomas, J.).

transportation of passengers; it applies on a per-trip basis to buses or other vehicles (e.g., delivery vehicles), loaded or empty.

As for "indirectly" comprising a tax on passengers, some or all of the fee may well be passed on to passengers in higher ticket prices--and so the tax may mimic the effect of a charge that would be forbidden under clauses (1) and (3). But that is true of many taxes--say, the state tax on gasoline--and could be said of any state charge or fee that affects buses, including parking tickets.

The problem with the argument is not that the bus statute fails to use the term "indirect." In fact, the AHTA originally prohibited charges that "directly or indirectly" fell within the enumerated categories, and the language was later deleted as superfluous. See note 1, above. We would therefore be free to read the bus statute as broadly as the original AHTA. The real issue is whether and when the statute should be read to embrace fees and charges that are not within its most straightforward reading but may come reasonably close.

We cannot supply a single test for making this kind of judgment. Probably the (oft-hidden) variables include, among others, the closeness of the language fit to the new situation; our perception of how closely the effects of the fee in dispute mimic the effects of a clearly forbidden fee; how far the evil targeted by Congress is present and how far it is mitigated by other

circumstances; and how practical or dangerous would be the extension of the statute beyond the most straightforward reading.

It is in matters of this kind that deciding cases resembles an art far more than a science. If there is any formula at all, it is vague and incomplete, and the information required to execute it is thin. But a spurious certainty is rarely persuasive, and resort to it in the case at hand would compromise our ability to decide properly the cases that follow. And, as here, an issue may be close without really being in doubt.

In this instance, the fee in question does not cleanly fit the categories' language, but it could probably be squeezed into one or two without violent distortion. The effect of the fee is probably pretty close to clearly forbidden fees, but here there is a catch: almost any tax or fee imposed on buses that carry passengers interstate would have the same basic effect as toll charges on Massachusetts highways--tolls that for a trip from Logan to New York probably match or exceed the Logan fees.

The most difficult aspect is understanding the evil that prompted the statute. The airport statute fit fairly neatly into a pattern of related taxes and fees and contained targeted exceptions;[3] by contrast, the bus statute, which does not fit such

---

[3]For airlines, Congress, prior to Evansville, had in place a complicated structure of federal airport subsidies and counterpart federal taxes both on airlines and passengers. See Aloha Airlines, Inc. v. Dir. of Taxation, 464 U.S. 7, 8-10 (1983). The AHTA arguably dovetailed with this existing structure by prohibiting

a pattern and contains no exceptions, appears most likely to have been a reflexive response to a specific perceived evil--the failure to apportion a tax charged on interstate bus tickets--which is not present in our own case.

The bus statute is, admittedly, more broadly written than the particular evil, and we would readily apply it according to its terms to any case that came squarely within it. But this case does not come squarely within the most straightforward reading of those terms. Nor need we ignore the fact that the dormant Commerce Clause doctrine is available as a backstop to remedy real abuses by states against interstate commerce--either discrimination or unduly burdening such commerce.

Finally, the present fee, although not cleanly within the statute, is pretty close; but alongside it are a whole series of charges and taxes even further away. The bus companies have offered no easy stopping point once one starts down their road of judging by effects, and none occurs to us. This is not a conclusive objection, see Schauer, Slippery Slopes, 99 Harv. L. Rev. 361, 381-83 (1985), but neither is it irrelevant when added to others already mentioned.

By contrast, if Congress does not think that charges like Massport's are acceptable, it can easily fine-tune its statute to

---

state duplication (thereby avoiding double taxation) while explicitly carving out and safeguarding certain other state taxes. See id. at 9-10.

provide greater protection to bus companies (and greater guidance to courts).  Often, invoking the possibility of Congress' response is window dressing, but carriers of all kinds have been reasonably effective in inviting attention to abuses, and Congress has not been slow to regulate.  There is thus much to be said for taking Congress strictly at its word, as we do in this case.

The bus companies cite Aloha Airlines, Inc. v. Director of Taxation, 464 U.S. 7 (1983), as requiring respect for the "plain meaning" of statutes like ours.  There, the Supreme Court held that the AHTA applied with full force to bar Hawaii's tax on local airlines' gross income.  Id. at 14-15.  The Court said that both the plain language and legislative history of the AHTA encompassed gross receipt taxes and that Hawaii could not escape the ban by saying, as it did in its tax statute, that the gross income tax was "a means of taxing . . . personal property."  Id. at 10, 12-14.[4]

That case was an easy "plain language" case because the state expressly "levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business."  464 U.S. at 10 (quoting the state statute).  It was thus in substance a tax on gross income, even if the state purported to employ that tax as a substitute for levying a tax on

---

[4]Property taxes were specifically exempted from the AHTA ban, see Aloha Airlines, 464 U.S. at 10, but property taxes are normally levied on the value of property, not on the income derived from it. Black's Law Dictionary 1498 (8th ed. 2004).

property.  A tax on bus visits to Logan is not formally a tax on passengers, passenger transportation, or the sale of tickets, even though it may affect the price at which tickets are sold.

There is a perhaps better argument based on Supreme Court dictum in the Kent case, where, prior to the enactment of the bus statute, the Court rejected an attack by airlines on user fees imposed by a local airport.  510 U.S. at 358.  This result was easy enough--the statute expressly carved out a safe harbor for "reasonable rental charges, landing fees, and other service charges" for airport facilities, 49 U.S.C. app. § 1513(b) (1994)-- and the fight was primarily about the vehicle for challenge and the reasonableness of the fees.  Kent, 510 U.S. at 364-73.

Yet in introducing the latter subject, the Supreme Court, in a brief passage, stated that the user fees, had they not been "saved" by the subsequent carve-out, would have fallen within the categories of fees prohibited by the statute.  510 U.S. at 365. This statement, unnecessary to the result, arguably overread the cited portion of Aloha Airlines, which said only that the AHTA was not limited to direct head taxes.  464 U.S. at 12-13.  In any event, the notion that a statute can be applied beyond its strictest terms would not itself give an answer to our own case, and the Kent dictum is not relied on by the bus companies in this court.

Somewhat further afield, the bus companies also say

(quoting this court) that Congress has maintained a "significant-- and undisputed--presence" in interstate transportation, United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 336 (1st Cir. 2003), and they point to the 1982 federal statute that deregulated bus transportation, Bus Regulatory Reform Act of 1982, Pub. L. No. 97-261, 96 Stat. 1102 (codified in scattered provisions of 49 U.S.C.), and follow-up decisions that have limited state licensing that limits competition on intrastate routes. E.g., Greyhound Lines, Inc. v. City of New Orleans, 29 F. Supp. 2d 339 (E.D. La. 1998); Alex's Transp., Inc. v. Colo. Pub. Utils. Comm'n, 88 F. Supp. 2d 1147 (D. Colo. 2000).

But this is an atmospheric argument, not analysis. It seeks to imply, unpersuasively, that because Congress regulates aspects of surface transportation, the present bus statute should be extended beyond its terms. It also ignores the significant state burdens--such as income, property, and fuel taxes--that are lawfully laid upon bus services, including the bus companies involved in this case. This is an area filled with compromises rather than unqualified general principles.

Conversely, Massport, backed by an amicus brief from the Commonwealth, says that a victory for the bus companies could imperil other taxes. The bus companies respond by calling this a lawyer's typical parade of horribles (without explaining just where a defensible line should be drawn). While the difficulty of

-13-

finding a stopping point is not irrelevant, there is also a lack of any very good reason to start down the road. Lacking such a reason, the most straightforward reading of the statute--we do not say "plain"--is a good default position.

So far we have said nothing about whether the fee, if it otherwise came within one of the four categories, would also fall within the "interstate commerce" rubric that qualifies each category. The reason is that both parties assume that the qualification is met; neither party has said anything about the non-Logan origins or destinations of the passengers (or percentages of passengers), or whether the party thinks it matters that most of the flights out of Logan are probably to other states.

Interesting problems are buried in the parties' joint assumption, but it does not affect the outcome of this case, and we are content to leave such problems for another day. The point is worth mentioning largely to make clear that we are not, without more information and a focused argument, endorsing any assumption about the meaning of this "interstate commerce" language.

<u>Affirmed.</u>